[No. 5056.]

## GUS BRAMLETTE *v.* THE STATE.

1. PRACTICE—WITNESS—EVIDENCE.—An exception to the rule that the husband and wife are incompetent to testify against each other, is in the case of a criminal prosecution of the one for an offense committed against the other. Being competent to testify in such case, it is not optional with such a witness to testify or not, as he or she may elect, but, if presented as a witness for the State, he or she may be compelled to give evidence for the State. See the opinion *in extenso* on the subject.

2. SAME—MALICE.—CHARGE OF THE COURT defining malice in substantial accord with No. 708 of Willson's Criminal Forms is sufficient.

3. SAME.—The trial court is not authorized to instruct the jury upon issues not raised by the evidence. See the statement of the case for evidence upon a trial for assault with intent to murder, *held* not to raise the issues of simple or aggravated assault and battery, wherefore the omission of the trial court to charge upon those issues was not error.

4. SAME—INTOXICATION.—The general charge of the court having sufficiently instructed the jury with regard to the specific intent essential to the commission of the crime, it became the duty of the defendant to request additional charges, if he desired them, with regard to the effect of drunkenness upon his mental condition, or intent at the time of the assault.

5. SAME.—REASONABLE DOUBT should be charged in the exact language of the statute.

APPEAL from the District Court of Bexar.  Tried below before the Hon. G. H. Noonan.

The conviction in this case was for an assault with intent to murder one S. J. Bramlette.  The penalty assessed against the appellant was a term of two years in the penitentiary.

Mrs. S. J. Bramlette, the wife of the defendant, was the first witness for the State.  She stated that she and the defendant had reconciled their troubles and had agreed to live together as soon as defendant could get out of this prosecution.  She therefore declined. to testify against him.  Defendant's counsel objected to the further examination of the witness on behalf of the State. The court overruled the objection, and instructed the witness that she would be required to testify.  Witness then testified that she saw the defendant on Christmas day, 1884.  Witness next saw him after his arrest at Kerrville, and his return to San Antonio.  Defendant came home under the influence of liquor on the said Christmas day, 1884.  He wept copiously, was much excited, and talked to the children, of which he and witness had four, aged respectively four, six, nine, and twelve years. He said that he wanted to take the children, as witness was unable to support them.  Witness replied that he could take the two boys, but that she would keep the two girls.  Defendant did not accuse witness of infidelity.  He did not say that he wanted all of the children, but witness understood his demand to include them all. A dispute about the custody of the children arose between witness and defendant, and the latter became excited.  He brought a pistol with him to the house, and the witness was shot by a ball from that pistol.  In the course of the talk between the witness and the defendant, the defendant took the pistol from the side pocket of his over coat with his left hand and passed it to his right hand.  Some threads and wadding from his over coat pocket adhered to the pistol, and while defendant was rubbing them off with his left hand the pistol was discharged, the ball striking the witness on the head, making a scalp wound.  Witness could not say that the pistol was fired intentionally.  She thought it was discharged by accident.  At all events, the defendant did not point the pistol at the witness with his hand, and, besides, it was discharged while he was rubbing the threads off it with his left hand.  He made no effort to fire a second shot, although no one was present in the room but he and the witness. Witness walked out of her own house to a neighbor's to secure

treatment, and to ascertain the nature of the wound.    When he drew his pistol the defendant remarked:    "We had better all be dead if we can get along no better than we do."    Witness did not know where the defendant went after the pistol was discharged.    Witness corresponded with the defendant after the shooting, and they had perfected their arrangements to live together again.    Witness had made no arrangements with defendant not to testify in this case, but she did not want him convicted. She needed his help in the care of the children and herself, and wanted to live with him.    She sent for Mr. Shields after defendant's arrest at Kerrville, but before his return to San Antonio in custody, and told Shields that she wanted her husband acquitted, as she wanted to live with him.

Doctor Braunagel testified, for the State, that he treated Mrs. Bramlette for the wound in her head which was inflicted on Christmas day, 1884.    Had the ball gone straight through her head instead of glancing off, it would, most probably, have killed her.

The motion for new trial raised the questions discussed in the opinion.

*Shields & Shields*, for the appellant: The first assignment of error is to the court compelling Mrs. S. J. Bramlette, wife of the appellant, Gus Bramlette, to testify for the State against her husband, after she had positively declined and refused to do so.

We submit that, at common law, neither the husband nor wife were competent witnesses for or against each other in any case, either civil or criminal.

When Mrs. S. J. Bramlette, the person upon whom it is alleged the assault was made, was called as a witness for the State, she stated under oath that she was the wife of the defendant, Gus Bramlette, and that she and her husband had made arrangements to live together again; that they have a family of four children, aged respectively, four, six, nine, and twelve years, and that she was not able to support herself and the children, and needed the assistance of her husband; that their arrangements to live together were made before the arrest of her husband, and were prevented only by his arrest, and that she was not willing to testify against her husband, and refused to do so.    The court compelled her to testify under pain of contempt of court, and over the defendant's objections.    (Coke Litt., 6 b.; 1 Bl. Com., 433, 444, n. 46; 2 Bou. In. Par., 3171; 1 Minor's

Iń. Com. and Stat. Law, 397–9; Arch. Cr. Pl. and Ev., p. 178, par. 148; 1 Greenlf. Ev., par. 374; 2 Bacon's Abridg., par. 578; Gee v. Scott, 48 Texas, 510, and cases cited; Dill v. The State, 1 Texas Ct. App., 278; Compton v. The State, 13 Texas Ct. App., 271.)

There was an exception at common law to the above rule, that in all cases of personal injuries committed by the husband or wife against each other, the injured party was an admissible witness against the other.

The above rule of the common law has been changed by statute in this State, as follows: "The husband and wife may, in all criminal actions, be witnesses for each other, but they shall in no case testify against each other, except in criminal prosecution for an offense committed by one against the other." (Code Crim Proc., Art. 735.)

The only innovation made by this statute upon the rule of common law, is to permit the husband and wife to be witnesses for each other in all criminal actions. The change is made in the first paragraph of the above article of the statute. The remainder of this article, if it means any thing at all, simply reaffirms the doctrine of the common law. The rule would remain precisely the same if all of this article under consideration, after the first paragraph had been entirely omitted. It would scarcely be claimed, under any theory of construction, that a statute permitting the husband and wife to be witnesses *for* each other, was equivalent to saying that they might also be witnesses *against* each other. This would be in clear violation of all well known and accepted rules of construction. That the last paragraph of this article of the statute has not been correctly understood, and has led to confusion, is clearly shown by the decision of this court in the case of Compton v. The State, 13 Texas Court of Appeals, 271, overruling the Morrill and Roland cases, the former decided under this statute, and the latter a statute substantially similar.

That the decision in the Compton case lays down the correct doctrine can scarcely admit of doubt. Its reasoning is unanswerable, and abundantly sustained by authority. Its tendency is in the direction of a more strict construction of this statute, and in harmony with well recognized rules of construction.

As our third proposition, we submit that the court has no authority to compel the wife to testify for the State against her husband when she refuses to do so.

There is nothing in the language of the statute above quoted,

nor in the rules of the common law, which will sustain the ruling of the court upon this question. The law guards with jealous care the sanctity of the marriage relation, and will not tolerate, much less force upon the parties a course of conduct that must inevitably lead to discord and confusion, where there should be only unity and harmony. This is a rule of public policy as well as the rule of law. Statutes in derogation of the common law shall be construed strictly. (Cooley on Const. Lim. par. 61.)

The article of the statute under consideration merely permits the husband or wife to testify against each other in certain cases, but does not compel it. It confers a privilege for the protection of either one, which they may exercise or not in their discretion.

But it may be said that if it is a privilege of the wife, the husband can not avail himself of her personal privilege. We answer, if for any reason the testimony was not admissible, then it was incompetent, and the defendant was convicted upon incompetent evidence, and has a right to complain, having made timely objection to its admission and reserved an exception.

It is believed that the precise question now under consideration has not been adjudicated in this State, and has received but little attention from the courts of last resort of other States, and hence the scarcity of authority upon the question. This is no doubt owing to the fact that trial courts have never assumed or claimed the right to compel the wife to testify in such cases, against her expressed will, and a further consideration may be the questionable character of the testimony, on account of the great temptation to commit perjury, and because contrary to sound public policy. These are considerations which at all times should weigh with the greatest force in the minds of courts.

We do not claim that the following authorities are directly in point, but we submit that their reasoning will greatly aid in a correct solution of the question. (Byrd v. The State, 57 Miss., 243; 34 Am. R. 440, and note, p. 444; Knowles v. The People, 15 Mich., 408; Dixon v. The People, 18 Mich., 84; Hubbell v. Grant, 39 Mich., 641; Overton v. The State, 43 Texas, 616; Dill v. The State, 1 Texas Ct. App., 278; Wilke v. The People, 53 N. Y., 525; The People v. Fitzpatrick, 5 Park, N. Y., Cr. R. 26.)

In the note to Byrd v. The State, above cited, there is a New York case reported, which was decided under the following statute: "In all criminal trials and examinations before trial a husband or wife may be examined on behalf of the other, but

upon no such trial shall a husband or wife be compelled to testify against the other."

The court say, by Justice Osborn: "Does this section confer the right claimed by the prosecution? It seems to me clearly not. The only innovation which this section makes upon the common law or the statutes as they formerly existed was to give a right to husband and wife to be examined as a witness on behalf of the other in a criminal trial or examination. Suppose this were all of the section, would it be contended for a moment that either could be called as against the other? Of course not. Now, the other words are of a negative character. They certainly create no new right or privilege as to the husband or wife being witnesses that did not exist before. The only construction that can be given to these words to warrant the position taken by the prosecution would be, that because the Legislature said they could not be compelled to testify against each other, the inference is they might do so, if such testimony was voluntarily given. But it would be most dangerous to allow any such interpretation or construction of the section. Such an innovation upon the common law would require a positive, affirmative provision or enactment of the Legislature. She could not be called as a witness in behalf of her husband until the Legislature so enacted. She certainly can not be called to give evidence against him until the authority is expressly given. It may be that the latter part of this section amounts to nothing. Certainly, no one claimed before its enactment that husband or wife, by any law that ever existed, could be compelled to testify against each other."

In the case of Byrd v. The State, above cited, under a statute precisely similar to the New York statute above quoted, the court, through Chief Justice George, say: "The whole force of the implication that the Legislature intended to allow one (husband or wife) to be a voluntary witness against the other in criminal cases arises from the use of the words, 'but they shall not be *required* to testify against each other as witnesses for the prosecution,' following immediately after the provision allowing them to be witnesses for each other, and as a part of the same sentence. We regard this as rather an over cautious insertion to prevent an apprehended construction of the preceding words, than as engrafting a new and independent provision on the statute, which would be the case if it allowed the examination of one against the other, in case the party offered as a witness did

not object. But if we are to construe this language to mean that the Legislature thought that by the common law husband and wife might be required to testify against each other when they were allowed to testify in behalf of each other, and to infer that this provision was inserted to prevent the operation of such a rule without the consent of the party offered as a witness, it does not follow that we are to construe the provision as making this erroneously supposed rule of the common law a part of the statutes of the State. An enactment of the Legislature based on an evident misconception of what the law is, will not have the effect, *per se,* of changing the law, so as to make it accord with the misconception."

In Knowles v. The People, above cited, the court say: "It is manifest that the rule which prevents a wife from being compelled to testify against her husband is based on principles which are deemed important to preserve the marriage relation as one of full confidence and affection, and that this is regarded as more important to the public welfare than that the exigencies of law suits should authorize domestic peace to be disregarded, for the sake of ferreting out some fact not within the knowledge of strangers."

In Dixon v. The People, above cited, this language is used by the court: "The rule which excludes husband and wife from testifying against each other rests upon sound reasons of public policy, much broader than that of the mere interest of a witness. The object of the rule is to avoid occasion for domestic dissensions and discord; to preserve inviolate that mutual confidence which is essential to the marriage relation, the peace of society and social welfare."

We submit that the ruling of the court upon this question can not be sustained, either upon principle or by authority. If the Legislature, in the enactment of the statute, intended to give it any such interpretation, it has been singularly unfortunate in the choice of language in which to express its meaning. No such presumption can reasonably be indulged. Much better to give it a construction in accordance with plain and obvious meaning as shown by the language used. This will be in the direction of the unity and integrity of the family and the welfare of society. The ruling of the court tends to break up and destroy the family, and opens wide the door for perjury on the part of the unwilling witness, to which the court becomes little

less than an accessory. We are unwilling to believe the Legislature intended to make any such result possible.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. This appeal is from a conviction for an assault with intent to murder. The alleged injured party was the wife of the appellant.

1. On the trial the prosecution called defendant's wife as a witness upon the stand, who, after being duly sworn, stated that she was the wife of the defendant, was unwilling to testify against her husband, and refused to do so. Defendant, by counsel, objected to witness testifying for the State, which objection was overruled, and the witness was instructed that she must testify, and directed to proceed with her testimony. Defendant saved his exception.

An exception to the rule that the husband and wife are incompetent to testify against each other is in the case of "a criminal prosecution for an offense committed by one against the other." If the offense is one committed by one against the other, then the injured party is competent to testify as a witness. If competent to testify, then such party can be forced to testify, as any other witness may be. (Dumas v. The State, 14 Texas Ct. App., 465.)

A similar question upon a similar state of facts arose in the case of Turner v. The State, 60 Mississippi, 351, and it was held that a wife is a competent witness against her husband in a prosecution for an assault and battery committed by him on her person, although she objects to testifying in the case, and that if it was the wife's privilege to testify or not, as she might elect, it was clear that appellant could not assign for error the action of the court in compelling her to give evidence over her objection; or if the action of the court be error, it is the privilege of the witness, and not the legal right or immunity of defendant, which is impaired. (Citing 1 Greenl. Ev., sec. 45; 2 Phil. Ev., 941; Roscoe's Crim. Ev., 146; and Reg. v. Kingslake, 11 Cobb C. C., 499.)

In such a case, it is said, that it is for the injury to the public committed upon it through the person of the wife, that the husband is punished. It is the offense against the public for which he is tried; he is the offender of the public, and not the wife alone, and she is competent to testify as a witness for the public, and not as a witness for herself. It is a competency not to be waived by her, or affected by her desires or fears. The court did not err in its ruling upon this question.

2.   The second bill of exceptions is untenable. The court sufficiently defines "malice" in the sixth paragraph of its charge to the jury. (See Willson's Crim. Forms, sec. 708, p. 332.)

3.   The third bill of exceptions was to the omission of the court to submit in its charge to the jury the issues of aggravated assault, and simple assault and battery, and the law applicable thereto. In answer to this exception we say there was no question of aggravated or simple assault and battery legitimately arising upon the facts proved.

4.   The fourth bill of exception complains of an omission of the court to submit to the jury the law with regard to intoxication of defendant at the time of the alleged assault, and how far it should be considered as affecting his mental condition and ability to form and entertain a criminal intent. In the seventh and eighth paragraphs of the general charge, the court sufficiently instructed the jury with regard to the specific intent essential to the commission of the crime, and there was no additional instruction asked in behalf of defendant with regard to the effect of drunkenness upon his mental condition. If defendant desired the jury should be informed as to the law bearing upon this question, he should have asked additional instructions covering the supposed defects or omissions in the general charge.

5. The fifth bill of exceptions is contradicted by the seventh and eighth paragraphs of the charge of the court to the jury.

6. The sixth bill of exceptions is taken to the failure of the court to charge the reasonable doubt. The charge of the court was substantially, if not literally, in the language of the statute. (Code Crim. Proc., Art. 727.) This is not only all that the court is required to do, but is exactly what it should do in charging the reasonable doubt. (Massey v. The State, 7 Texas Ct. App., 563; Ham v. The State, 4 Texas Ct. App., 464; Walker v. The State, 13 Texas Ct. App., 618; Fury v. The State, 8 Texas Ct. App., 471; Schultz v. The State, 20 Texas Ct. App., 316.)

7. The seventh bill of exceptions is to the overruling of defendant's motion for a new trial. This motion contained fifteen specific grounds, most of which have been already discussed in discussing the defendant's bills of exceptions above, and none of the remaining grounds call for special notice at our hands.

No reversible error having been found in the record, the judgment is affirmed.

*Affirmed.*