## STATE vs. THEODORE LYNCH.

1. WITNESSES—STATE HELD TO HAVE PROPERLY EXAMINED DEFENDANT'S WIFE AS TO FACTS NOT CONSTITUTING PRIVILEGED COMMUNICATION.

In criminal prosecution of husband, mere statement of wife that she would rather not testify against husband was not a claim of her right or privilege to refuse to testify, and as husband cannot, by a claim of privilege, prevent wife from testifying in behalf of state, state had right to examine wife as to any facts which were not privileged communications.

2. HOMICIDE—ADMISSION OF WIFE'S TESTIMONY THAT HUSBAND STATED HE WAS GOING TO KILL DECEASED, IF ERRONEOUS, HELD NOT TO REQUIRE NEW TRIAL.

In prosecution of husband for murder, admission of testimony of wife that she heard her husband say, as he left his home with his gun, that he was going to kill deceased, if erroneous, *held* not to require new trial, where defendant was convicted of murder in second degree, and there was ample evidence to sustain verdict.

3. CRIMINAL LAW—SHOWING NECESSARY TO WARRANT NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE, STATED.

To warrant new trial for newly discovered evidence, it must appear that such evidence will probably change result on another trial, that it has been discovered since the trial and could not have been discovered before by exercise of due diligence, and that it is not merely cumulative or impeaching.

4. CRIMINAL LAW—NEW TRIAL NOT GRANTED FOR NEWLY DISCOVERED EVIDENCE, WHERE SUCH EVIDENCE OBTAINABLE BEFORE TRIAL.

Where effort resulting in discovery of alleged newly discovered evidence could have been as well and successfully made before trial, there is a lack of due diligence, and new trial will not be granted.

5. CRIMINAL LAW—NEW TRIAL DENIED WHEN NEWLY DISCOVERED EVIDENCE IS THAT OF PERSON WHO WAS WITNESS AT TRIAL AND COULD HAVE BEEN FULLY EXAMINED.

If newly discovered evidence is that of person who was witness for defendant at trial and could have been examined at or before trial as to entire knowledge of facts material to case, new trial will be denied, especially when his testimony at trial was inconsistent with new evidence.

6. CRIMINAL LAW—NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE NOT GRANTED, WHERE BASED ON AFFIDAVIT OF ONE WHO APPARENTLY SWORE FALSELY.

A new trial for newly discovered evidence will not be granted, where based on affidavit of person whom court has good reason to believe swore falsely at trial or in making affidavit in favor of new trial.

7. HOMICIDE—NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE DENIED IN VIEW OF EVIDENCE REFUTING IT.

Newly discovered evidence of finding of a blood-stained knife about 75 yards from scene of fight, alleged to have belonged to deceased, *held* not to require new trial, where spot where knife was found had been carefully examined by a state detective on day following the fight, and different knife belonging to deceased was found near his body.

8. CRIMINAL LAW—NEW TRIAL FOR NEWLY DISCOVERED TESTIMONY OF ALLEGED EYEWITNESS, CONTARY TO OTHER TESTIMONY AND HIS OWN TESTIMONY AT TRIAL, DENIED.

Motion for new trial for newly discovered testimony of alleged eyewitness of fight will be denied, where such testimony is in direct conflict with testimony of other eyewitnesses, and such alleged eyewitness was witness for defendant at trial and testified that he did not witness fight.

*(February 27, 1925.)*

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Clarence A. Southerland,* Attorney-General, *James R. Morford* and *Howard J. Cooke,* Deputy Attorneys-General, for the State.

*James M. Tunnell* for defendant.

Court of Oyer and Terminer for Sussex County, February Term, 1925.

Motion for a new trial, being case No. 11, February Term, 1925.

The reasons assigned for defendant's motion are:

1. That the verdict was against the evidence.

2. That the verdict was against the law.

3. That the verdict was against the evidence in that the uncontradicted evidence that the killing was in self-defense was ignored by the jury.

4. That the verdict was induced by the evidence given by Mary Lynch, the wife of the defendant, whose testimony the State was permitted to take after she had stated to the court that she would rather not testify against her husband, which was her method of claiming her privilege, and without whose testimony a verdict of conviction would have been very inprobable.

5. That communications between the husband and wife which are always privileged were admitted in evidence over the objection of the defendant's attorney.

6. That the defendant has come into possession of new evidence since the trial which would have rendered a different verdict probable, if the same had been known by the defendant at

the time of the, trial, to wit, the knife of Clarence Lynch with which the attack was made on him has been discovered with blood still upon it at or near the spot to which Mary Lynch, the wife of the defendant, claimed to have run on the night of December 19th, at the time of the killing.

This defendant had no means of discovering the said knife and it is only since the trial that the knife was discovered as aforesaid. The defendant believes that if the said knife had been produced in evidence, it would have been sufficient to convince the jury that his story of self-defense was absolutely true. The defendant can establish the fact that this was the knife of Clarence Lynch and the one that was used by him in his attack on the defendant. That since the said trial the defendant has learned that George Baine was an eye witness of the struggle between him and his brother; that he never knew that the said George Baine was an eye witness until since the trial; that he had no means of knowing that the said George Baine had seen the struggle and that by the said George Baine he will be able to show that Clarence Lynch jumped from his car and attacked him, the defendant, while in the act of rising from the ground after having been knocked down or pushed down in a stunned condition by Clarence Lynch, the deceased; that if he had been able to produce this evidence at the trial, it is the belief of the defendant the verdict of the jury would have been different and that no conviction would have resulted.

PENNEWILL, C. J., delivering the opinion of the Court:

It is unnecessary to refer to the first, second and third reasons assigned for granting a new trial except in a general way. The evidence produced at the trial respecting the defendant's guilt was sufficient, if believed by the jury, to warrant the verdict they rendered. The verdict was not against the law. The evidence showing that the killing was done in self-defense was contradicted by the two witnesses who testified for the State and who swore they were eye witnesses of the fight.

[1] The fourth reason urged for a new trial, is that the State

was permitted to examine defendant's wife as a witness after she had said to the Court she would rather not testify against her husband. Counsel for the defendant insists that such a statement was equivalent to saying she would not testify unless compelled to. Assuming for the present that the wife might have refused to testify against her husband, and could not have been compelled to testify, the Court are of the opinion that the witness did not claim or exercise such right or privilege. Although given the opportunity she did not express an unwillingness to testify; the most she would say was that she would rather not. The Court finally asked the wife the following question:

"But you do not take the position that you will not do it unless you have to; are you willing to do it without being compelled to do it?"

To which she answered:

"Yes, but I would rather not."

There can be no doubt that even if the wife could claim her privilege and refuse to testify against her husband, respecting communications that did not grow out of the marriage relation, such right is personal and cannot be taken advantage of by another. Counsel for the husband, the defendant, objected to the examination of the wife as a witness and sought to have her claim her privilege. The Court in the case of State *v. Jaroslowski*, 7 *Boyce* 108, 103 *Atl.* 657, held that a husband, the defendant, in the case, cannot by a claim of privilege prevent the wife from testifying in behalf of the State.

It is our conclusion, that the wife having failed to exercise or claim her alleged right or privilege to refuse to testify against her husband, the State had the right to examine her respecting any fact in her knowledge that was not, within the meaning of the law, a privileged communication growing out of the marriage relation. She testified very fully and freely concerning the fight between her husband and his brother to which she and another witness were eye witnesses, and in which the brother received the knife wound that resulted in his death. It is not claimed by the defendant that such testimony was inadmissible if the witness had

failed to claim her privilege, because the facts to which she testified were not privileged communications growing out of the marital relation. The only testimony given by the wife that defendant claims was such a privileged communication was that in which she said her husband, on the day of the killing, left her home with his gun for a while, saying he was going to kill Clarence. This testimony constitutes defendant's fifth reason for a new trial, and will be considered later.

While it is not necessary, in view of the fact that defendant's wife failed to claim her alleged privilege, to decide whether she could be compelled to testify respecting matters that were not confidential communications, we may say that the few reported decisions indicate that the spouse is, under statutes similar to ours, not only a competent, but a compellable witness as to matters not privileged on account of confidential communication.

The leading case on the subject is *Ex parte Beville*, 58 *Fla.* 170, 50 *So.* 685, 27 *L. R. A. (N. S.)* 273 and note, 19 *Ann. Cas.* 48 and note.

Our statute, *Code*, § 4216, provides as follows:

"It shall be lawful for a wife or a husband to testify for or against each other, in both civil and criminal causes in any of the Courts of this State."

The Florida statute provides that in trials of civil and criminal cases neither the husband nor the wife shall be excluded as witnesses where either the said husband or wife is an interested party to the suit pending.

The opinion of the Florida Court is interesting and elaborate. We quote the following:

"The husband and wife may testify and may be compelled to testify for or against the other, in criminal and civil cases, to any fact the knowledge of which was acquired by them independently of their marriage relation."

To the same effect is *Goeselin v. Rex*, 33 *Cann. Sup. Ct.* 255.

See, also, the following cases: *Dumas v. State*, 14 *Tex. App.* 464, 46 *Am. Rep.* 241; *Bramlette v. State*, 21 *Tex. App.* 611, 2 *S. W.* 765, 57 *Am. Rep.* 622; *Calloway v. State*, 92 *Tex. Cr. R.* 506, 244 *S. W.* 555; *Clements v. Marston*, 52 *N. H.* 31; *State v. McCord*, 8 *Kan.* 232, 12 *Am. Rep.* 469.

The cited cases seem to clearly hold, that where the state statute removes the common law disqualification of husband and wife and makes either competent to testify against the other, and does not by its terms specifically limit that competency so as to give either the witness or the defendant a privilege in connection therewith, that the husband or wife in such case may be compelled to testify to any facts the knowledge of which was acquired independently of their marriage relation.

The Court also said in the Florida case:

"The disqualification or privilege, so called, of husband and wife as witnesses at common law must not be confounded with the doctrine of confidential or marital communications. Our statute is aimed at objections to husband and wife as witnesses—not to the matter of their testimony; and the change of the common-law rule by making one spouse a competent witness against the other does not affect the rule against disclosure of marital communications."

This seems to be a correct statement of the law according to the authorities, including the case of *Williams v. Betts*, in 11 *Del. Ch.* 128, 98 *Atl.* 371, which holds that the statute in question does not remove the bar of the common law against testimony of husband and wife as to communications between them based on the marital relation. It is not clear from the authorities what are, and what are not, such communications, but it is clear that neither husband nor wife can testify respecting them, and the reason is that such disclosures would be contrary to public policy.

This brings us to defendant's fifth reason for a new trial, viz.:

"That communications between husband and wife which are always privileged were admitted in evidence over the objection of the defendant's attorney."

To this reason urged by the defendant the State makes, among other objections, the technical one that the testimony of the wife was not opposed at the trial on the ground now relied on, but only because she had claimed her privilege and should not have been heard to testify against her husband at all.

Strictly speaking, the State's contention may be sound, because the defendant entered one and the same objection to the admission of all the testimony given by the wife. But we prefer, in this proceeding, to base our decision on a less technical and more

satisfactory ground. If an injustice was done the defendant during his trial by prejudicial error on the part of the Court, we prefer to remedy it in disposing of his motion for a new trial.

[2]   As already stated, the only testimony given by the wife which the defendant claims was a confidential communication, was her statement that she heard the defendant say as he left his home with his gun, on the day of the fight, that he was going to kill Clarence. It does not appear that he was addressing the remark to his wife in particular, or that no one else was present. Presumably, from the evidence, Miriam Mills was also present when the threat was made, if it was made, but she testified that she did not hear it. Apparently it was made, if made at all, to no one in particular, and we are inclined to think it was not a communication growing out of the marital relation within the meaning of the law on that subject.

But even if it was such a communication it is inconceivable to the Court, in view of all the evidence, that the verdict would probably have been different if the testimony respecting defendant's threat had been excluded.

There was abundant testimony showing the bitter feeling at times on the part of the defendant towards his brother, caused by the alleged undue intimacy and improper relations existing between defendant's wife and his brother, Clarence, which, it was claimed, had broken up defendant's home. The alleged threat, if made, was evidence of express malice aforethought and of murder of the first degree, but the jury did not find such a verdict, which tends to show that it made no real impression on their minds. There was evidence of threats made by Clarence against defendant's life, and of bad feeling between them, and it also appeared from the evidence, given by the defendant, that he and Clarence "sort of made it up," and he had told Clarence he might come over to his mother's on the evening of the tragedy. So, taking the testimony as a whole, we are satisfied the verdict would have been the same if the threat now objected to had not been admitted in evidence.

The last reason urged by the defendant for a new trial is based on evidence claimed to have been discovered since the trial.

There are certain well settled rules of law applicable to such evidence, among which are the following:

[3] In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial, and could not have been discovered before by the exercise of due diligence; (3) that it is not merely cumulative or impeaching.

[4-6] We may say, therefore, that if the effort that resulted in the discovery of the new evidence could have been as well and successfully made before the trial, due diligence was not exercised and a new trial should not be granted. Neither should a new trial be granted if the newly discovered evidence is disclosed by the affidavit of a person who was a witness for the defendant at the trial, and who could have been examined fully at or before the trial as to his entire knowledge of facts material to the case. This rule has particular force and application if the person who is to furnish the new evidence gave testimony at the trial contradictory to, or inconsistent with, the newly discovered testimony. The Court will not grant a new trial on the affidavit of a person whom the Court have good reason to believe swore falsely at the trial, or in making the affidavit in favor of a new trial.

We will endeavor to apply these principles of law to the present case.

The defendant relies on the following after discovered evid-dence:

[7] First. A knife that belonged to the deceased, and was found about two months after the killing with blood stains on it, about seventy-five yards from the scene of the fight. It was found, it is claimed, after a most particular search, covered with dirt and leaves, and was discovered by working the ground over with a rake.

A knife of the deceased with blood stains on it found soon after the fight and near the scene of the fight would be material

evidence at the trial where the defendant relied on self-defense. It is not certain, however, that the knife found so long after the killing and so far away would be admissible. If it should be admissible the circumstances under which it was found would cast so much doubt, if not suspicion, on the testimony as to make it of little, if any, value to the defense. And this thought is strengthened by the fact that a knife belonging to the deceased was found at or near a couch in his home upon which his body had been laid after he was killed, which knife was free from blood stains; and by the further fact that the newly discovered knife was found in a field seventy-five yards from the place of the fight and at a spot to which the wife of the defendant had run just before or during the struggle. It is difficult to see how the jury could infer that such knife was used by the deceased in the struggle that resulted in his death.

Another fact of some significance is disclosed by a counter affidavit made by Ottie Donoway, State Detective, in which it is stated that the affiant, having heard it suggested that the defendant's wife might have struck the deceased the fatal blow, went to the place on the day following the fight, and accompanied by defendant's wife, to the spot where she claimed to have stood and witnessed the encounter that could be seen from the light of the car. It was further stated that the affiant carefully examined said spot and the surrounding ground for the purpose of discovering any object that might have been dropped there the night before, but failed to find a knife or any other object that could have been used in the struggle.

[8] Second. The defendant represents that he had learned since the trial that George Baine was an eye witness of the fight between Clarence and himself; he had no means of knowing this fact before, and will be able to show, if granted a new trial, that Clarence Lynch jumped from his car and attacked him, the defendant, while in the act of rising from the ground after having been knocked down or pushed down in a stunned condition by Clarence Lynch. It may be said that such testimony would be in direct conflict with the testimony of two other persons who

swore they were eye witnesses of the struggle, viz.: the defendant's wife and Miriam Mills. It may be also said that Baine was a witness for the defendant at his trial, and it is not unreasonable to believe that in an examination then or before, his entire knowledge of the fight might have been elicited and used at the trial. And not only so, but Baine testified that he left the place around about two o'clock in the afternoon. He was asked this question by counsel for the defendant: "You did not stay until night?" His answer was: "No, sir." This does not conclusively show, by his admission, that he did not go away and return in the evening, but on cross-examination he was asked the following question:

"You do not know what happened after two o'clock"?

His answer was: "No, sir."

The reasonable conclusion from the last question and answer is, that Baine swore falsely either at the trial or when he made the affidavit in support of a new trial, wherein he swore that he was an eye witness of the struggle which occurred in the evening, and several hours after two o'clock.

Entertaining such belief the Court would not be justified in granting a new trial because of anything contained in the affidavit made by Baine. It is not at all likely that a jury would credit Baine's later testimony in view of the evidence he gave at the trial, and consequently it is very improbable that the result of the trial would be changed.

One of the dangers connected with motions for new trials, and recognized by the authorities, is that it opens the door to false swearing, and that perjury may be committed if the end sought to be accomplished cannot be secured in any other way.

We have taken the time to consider defendant's motion for a new trial very carefully, and would not hestitate, in a case of such importance, to grant the motion if convinced that prejudicial error, and one that worked real injustice had been committed. But we are not convinced that there has been any such error or injustice, and the Court are therefore constrained to hold, in the exercise of its discretion, that defendant's motion for a new trial should be refused.