John E. TYRE, III, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 29, 1979.

Decided Feb. 5, 1980.

---

L. Vincent Ramunno, Wilmington, for defendant-appellant.

Gary C. Linarducci, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

QUILLEN, Justice:

■ The defendant was indicted on charges of rape in the first degree, kidnapping in the first degree and terroristic threatening. He was tried by jury and convicted of sexual assault and kidnapping first degree. He was acquitted of terroristic threatening. The conviction of sexual assault, a lesser included offense of the charge of rape, also includes acquittals of rape in the first degree and rape in the second degree.[1]

On the kidnapping conviction, a class A felony, the defendant was sentenced to life imprisonment, a sentence which "may not be suspended or reduced by the court." 11 *Del.C.* § 4204(b), § 4205(b)(1). On the charge of sexual assault he received a consecutive two-year prison sentence, the maximum imprisonment for a class A misdemeanor. 11 *Del.C.* § 4206(a). He brings this appeal.

In light of the verdict of the jury, the facts are somewhat unusual and the divergence in the testimony worthy of brief note.

The victim testified she was grabbed from behind, pulled off the overpass road where she was walking, dragged over a wall and down a hill and forced into a culvert. The defendant testified the activity was consensual including a basically embracing roll down the hill and the victim's suggestion that they enter the culvert.

The victim testified to coerced sexual activity in many forms including penial penetration of her vagina.[2] The defendant testified to cooperative, but less active, sexual activity, restricted due to the fact that he had been drinking, that probably did not include penetration.

The victim was examined shortly after the incident and sperm was found in her vagina although none was found on her clothes which she had put back on immediately following the incident. Differing experts testified that the sperm was from less than twelve hours up to forty-eight hours old. One expert testified that the absence of sperm on the victim's clothing indicated its presence was not the result of the encounter with the defendant.[3]

The victim testified that the defendant had threatened to kill her and had cut her lip by hitting her. The doctor who examined her testified that the victim had been bruised in several places and received scratches to the surface of her skin. The defendant denied threatening the victim and denied hitting her.

While there were differences in the testimony of the victim and the defendant as to the victim's departure from the scene, each version indicates the victim left the defendant's company on the night in question at the scene and there appears to be no dispute that it was a safe place in statutory terms.

---

1. Under our statute and the indictment in the present case, to establish rape in the first degree, the State would have had to prove the victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact in addition to the general requirements of rape, i. e., the defendant's intentional engagement in sexual intercourse without the victim's consent. 11 *Del.C.* §§ 763, 764.

2. 11 *Del.C.* § 773 provides: " 'Sexual intercourse' means any act of coitus between male and female and includes intercourse with the mouth or anus. It occurs upon any penetration, however slight. Emission is not required.

. . . ." The jury was instructed in accordance with the statute. In addition to vaginal penetration, the victim testified at trial to nonconsensual oral and anal intercourse, although her trial testimony was somewhat inconsistent as to the latter. The jury determined that the defendant should be acquitted of rape notwithstanding the victim's testimony. Certain pretrial statements of the victim were also inconsistent with her trial testimony as to penetration.

3. The defendant testified that there was no emission. The victim testified that there was an emission but her trial and her pretrial statements were inconsistent on this point.

■ The offense of kidnapping, in our statutory scheme, can be either in the first or second degree.[4] The difference between them is that in second degree the actor "voluntarily releases the victim alive, unharmed and in a safe place prior to trial."

The defendant challenges his conviction on several grounds which we consider in accordance with the chronology in the Trial Court.

■ First, the defendant claims that certain remarks and conduct of the prosecutor and the chief investigating officer deprived the defendant of his right to a fair trial. In particular, the defendant claims it was wrong to allow testimony that the defendant had been advised of his *Miranda* rights when he thereafter made no statement. The defendant also claims prejudice because of testimony by the detective that the detective had personal knowledge of the defendant's address. Finally, the defendant claims error because the detective testified that he expected the defendant's wife to be an alibi witness. As to the last two items, we find no error in the trial, especially since the record shows the detective was well acquainted with the defendant's father and the use of the term "alibi", assuming it prejudicial at all, was merely incidental to testimony designed to show that the defendant's wife was uncooperative with the

pretrial investigation, in contrast to her testimony at trial. While we feel it is improper for the State, in the first instance, to elicit evidence showing the advising of rights when no statement was obtained, the short reference does indicate there was no mistreatment by the State of the defendant and thus is not totally without value, albeit premature. The defendant testified at length at trial and this incident is inconsequential and harmless beyond any reasonable doubt in this record. Not every reference to the exercise of the right to remain silent mandates reversal. *Cook v. State*, Del.Supr., 374 A.2d 264, 270 (1977); *Shantz v. State*, Del.Supr., 344 A.2d 245, 246–247 (1975).

■ Second, the defendant claims the evidence at trial was insufficient to show the victim had been harmed and thus insufficient to justify the verdict of kidnapping in the first degree.[5] We find the evidence was sufficient to justify the conclusion that the victim was harmed. Eliminating the charges rejected by the jury, the testimony is undisputed that the victim removed her clothes and her testimony was to the effect that this was done, after physical capture, at the defendant's order accompanied by a punch in the mouth corroborated by a cut lip. There was medical testimony as to

4. 11 *Del.C.* §§ 783 and 783A provide:

"§ 783. Kidnapping in the second degree; class B felony.

"A person is guilty of kidnapping in the second degree when he unlawfully restrains another person with any of the following purposes:

"(1) To hold him for ransom or reward; or

"(2) To use him as a shield or hostage; or

"(3) To facilitate the commission of any felony or flight thereafter; or

"(4) To inflict physical injury upon him, or to violate or abuse him sexually; or

"(5) To terrorize him or a third person; and the actor voluntarily releases the victim alive, unharmed and in a safe place prior to trial.

"Kidnapping in the second degree is a class B felony."

"§ 783A. Kidnapping in the first degree; class A felony.

"A person is guilty of kidnapping in the first degree when he unlawfully restrains another person with any of the following purposes:

"(1) To hold him for ransom or reward; or

"(2) To use him as a shield or hostage; or

"(3) To facilitate the commission of any felony or flight thereafter; or

"(4) To inflict physical injury upon him, or to violate or abuse him sexually; or

"(5) To terrorize him or a third person; and the actor does not voluntarily release the victim alive, unharmed and in a safe place prior to trial.

"Kidnapping in the first degree is a class A felony."

5. We have independently considered whether there was evidence to establish a substantial interference with the victim's liberty apart from the usual restraint involved in a sexual offense. We have concluded that the movement of the victim from a public thoroughfare to the more secluded, partially hidden culvert is clearly sufficient to support this element of the offense.

definite emotional distress including crying and evidence of discoloration and scratches on the victim's back, discoloration to knees and a bruised hip. In short, we think there was evidence from which the jury could find substantial harm resulting from non-consensual events on the victim's part. She was attacked from behind, dragged down a hill, forced into a culvert, forced to remove her clothing and then was assaulted in some degree sexually.

■ Third, the defendant claims that, since the jury rejected some of the victim's testimony, particularly the testimony as to rape, penetration and terroristic threatening, the jury in effect found the victim guilty of perjury. Therefore, the defendant argues, the convictions rest on perjured testimony, the verdicts are inconsistent and the judgment must be reversed. But it was the duty of the jury to determine if the State had proved each necessary element of the charges beyond a reasonable doubt and, in making such determination, it does not have to accept the total testimony of one witness. There is nothing inconsistent about a kidnapping for the purpose of sexual abuse and a sexual assault short of rape which is unaccompanied by a threat to kill. It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony. *State v. Adams*, Ct. of Oyer & Term., 65 A. 510, 512 (1906); *State v. Matushefske*, Del.Super., 215 A.2d 443, 448–449

(1965). The charge in this case carefully and at length stated the well established principles.[6] Obviously, the jury gave the defendant the benefit of any doubt on rape, penetration and threat to kill even though they found he feloniously kidnapped her for purposes of sexual violation and, without her consent, assaulted her sexually.[7] The matters of credibility were properly submitted to the jury and there is no error.

■ Fourth, we find no merit to the defendant's contention that a mandatory life term for kidnapping constitutes cruel and unusual punishment. *State v. Taylor*, Ariz.Supr., 82 Ariz. 289, 312 P.2d 162 (1957); *Beard v. State*, Ind.Supr., 262 Ind. 643, 323 N.E.2d 216 (1975).

■ Fifth, we find there was no error in the decision of the Trial Judge denying the defendant's motion for a new trial on the basis of newly discovered evidence. The relevant standard is well established. *State v. Lynch*, Del. Oyer & Term., 128 A. 565, 568 (1925) and the Trial Judge carefully considered the question in a post-trial letter opinion. We uphold his conclusions that the evidence could have been discovered in the exercise of due diligence and was cumulative. Moreover, we do not think the evidence would probably have changed the result had a new trial been granted. Thus, the standard of the *Lynch* case clearly has not been met.

6. The charge was:
"You are the sole judges of the credibility of each witness, including the defendant, and of the weight to be given to the testimony of each. You should take into consideration each witnesses' means of knowledge; strength of memory; opportunity for observation; the reasonableness or unreasonableness of his testimony; the consistency or inconsistency of his testimony; the motives actuating him; the fact, if it is a fact, that his testimony has been contradicted; his bias; prejudice; and interest, if any; his manner and demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affects the credibility of the witnesses' testimony.
"If you find the testimony to be conflicting by reason of inconsistencies, it is your duty to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, it is your duty and privilege to give credit to that portion of the testimony which, in your judgment, is most worthy of credit; and disregard any portion of the testimony which, in your judgment, is unworthy of credit.
"In so doing, you should take into consideration the demeanor of the witnesses as they testified before you; their apparent fairness in giving their testimony; their opportunity for learning and knowing the facts about which they testified; and any bias or interest they may have concerning the outcome of this case."

7. We are not certain why the jury was not given the option to return a verdict of attempt to commit rape. 11 *Del.C.* § 531 and § 206(b)(2). Given the verdict of the jury, error in this regard, if any, inured to the benefit of the defendant.

The judgment of the Superior Court is affirmed.