DEANDRE PETTIFORD, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 432, 2009.
Supreme Court of Delaware.
Submitted: December 23, 2009.
Decided: March 12, 2010.
Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 12th day of March 2010, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:
(1) A Superior Court jury convicted the defendant-appellant, DeAndre Pettiford, of one count each of second degree forgery, misdemeanor theft, theft by false pretenses, and second degree conspiracy. The Superior Court sentenced Pettiford as a habitual offender on each of the three felony convictions. The Superior Court imposed a total sentence of eleven years at Level V incarceration, with credit for time previously served, to be suspended after serving ten years for one year at Level IV work release. This is Pettiford's direct appeal.
(2) Pettiford's counsel on appeal has filed a brief and a motion to withdraw pursuant to Rule 26(c). Pettiford's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Pettiford's attorney informed him of the provisions of Rule 26(c) and provided Pettiford with a copy of the motion to withdraw and the accompanying brief. Pettiford also was informed of his right to supplement his attorney's presentation. Pettiford has raised several issues for this Court's consideration. The State has responded to Pettiford's issues, as well as to the position taken by Pettiford's counsel, and has moved to affirm the Superior Court's judgment.
(3) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]
(4) Although Pettiford filed a fifteen page letter in response to his counsel's motion to withdraw, his document raises only two distinct issues for the Court's consideration. First, he contends that the Superior Court erred in denying his motion for a judgment of acquittal because the evidence against him was insufficient to support any of his convictions. Second, he contends that the Superior Court erred in denying his motion to dismiss because the testimony of one of his co-defendants was not based on personal knowledge. We address these claims below.
(5) The undisputed evidence at trial established that an IRS tax refund check, made payable to William and Janeen Pollard in the amount of $13,638, was stolen from a home in Sussex County owned by the Pollards and rented by a woman named Seven Abdullah and her sister. The Pollards' endorsement on the check was forged, and, on April 1, 2008, the check was deposited through an ATM into a joint bank account owned by Michael Quailes and a woman named Juanita Sturgis.[2] On April 2, 2008, at approximately 9 a.m., Quailes withdrew $13,000 from the joint account. He made a second withdrawal around noon on the same day in the amount of $635. The State's indictment charged Abdullah, Quailes, and Pettiford with second degree forgery, misdemeanor theft, theft by false pretenses, and second degree conspiracy. Abdullah and Quailes resolved their charges by guilty pleas and agreed to testify against Pettiford at his trial.
(6) Abdullah testified at trial that she had dated Pettiford for about three weeks. During that time period, she recalled seeing the Pollards' refund check arrive in the mail. The check was set on the kitchen table with the Pollards' other mail. At some point later, she realized the check was missing. She did not know who took the check. Later, she saw the check was in the possession of Michael Quailes. She testified that Pettiford drove her and Quailes, in Quailes' car, to several different establishments in order to attempt to cash the check. She specifically testified that Pettiford and Quailes discussed cashing the check and, after that was unsuccessful, depositing the check and withdrawing the proceeds once the check cleared. She stated that Quailes was the person who endorsed the Pollards' names to the check.[3] After several unsuccessful attempts to cash the check, Abdullah helped Quailes, with the assistance of a bank clerk, in depositing the check through the ATM. Bank videotape was admitted into evidence reflecting this transaction. The following day, after the check cleared, Quailes met Pettiford and Abdullah at Pettiford's mother's house, where Quailes gave $13,000 in cash to Pettiford. She testified that Pettiford was in charge of disbursing the money and that he gave an unknown amount to Quailes and no money to her. Abdullah testified about the various ways in which she and Pettiford then spent the proceeds from the Pollards' check.
(7) Quailes also testified at trial. He testified that Pettiford's mother, Pam Luke, was a friend of his. Luke called him on the phone and asked him to come to her house and give her son a ride to the bank to cash a check. Quailes testified that Luke handed a check to Pettiford. Quailes stated that Pettiford agreed to pay him if he would drive Pettiford and Abdullah to cash the check. Quailes testified that he never endorsed the check and did not see the check up close in order to know that the check did not belong to Pettiford. Once he found out that Pettiford was unsuccessful in cashing the check, Quailes testified that he offered to deposit the check into his own account and then withdraw the money and give it Pettiford after the check cleared. Quailes testified that Abdullah prepared the deposit envelope and that he simply entered numbers on the keypad of the ATM in order to complete the deposit transaction. He testified that Pettiford and Quailes were the ones who had attempted to cash the check, and that Pettiford also was standing near Quailes and Adbullah while they made the ATM deposit but was out of view of the security camera. Quailes testified that the morning after the ATM deposit he went to his bank as soon as it opened and withdrew $13,000, which he then took to Luke's house and handed to Pettiford. Pettiford told Quailes that he could keep the remaining $638 for driving Pettiford around the previous day, so later in the morning Quailes made another bank withdrawal in the amount of $635. Bank records reflected both of these transactions.
(8) During his testimony, Quailes stated that he had had brain surgery in 1982 for which he continued to take medication. He stated that he sometimes had difficulty remembering events. He indicated that prior to coming to court to testify, he had spoken with Juanita Sturgis in an effort to refresh his recollection of the events that had led to his own arrest. He stated that he had spoken to Sturgis because she had been present when the bank had called him with suspicions about the questionable deposit and withdrawal he had made. After voir dire by the judge, however, Quailes confirmed that his testimony regarding the events leading up the ATM deposit were based solely on his own memory and personal knowledge and was not information that he had recalled only after talking to Sturgis. Based on this testimony, the trial judge denied Pettiford's motion to dismiss on the ground that Quailes' testimony was not based on personal knowledge. Furthermore, at the close of the State's case, the trial judge also denied Pettiford's motion for judgment of acquittal, finding that there was sufficient evidence to send each criminal count to the jury for decision.
(9) In reviewing the denial of a motion for a judgment of acquittal, this Court must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt.[4] In doing so, the Court does not distinguish between direct and circumstantial evidence.[5] In this case, we find the evidence was more than sufficient to sustain Pettiford's convictions. The testimony of Abdullah and Quailes, though conflicting in some respects, both implicated and confirmed Pettiford's role in the fraudulent transaction and was sufficient to establish the elements of all four charges beyond a reasonable doubt. To the extent Pettiford challenges the credibility of his codefendants' testimony, it was for the jury to determine the weight of the evidence and to resolve any conflicts in the testimony.[6]
(10) Moreover, we find no error in the Superior Court's denial of Pettiford's motion to dismiss on the grounds that Quailes' testimony was not based on personal recollection but was based on his pretrial conversation with Sturgis. As the Superior Court correctly held, the State established that Quailes' testimony of the events leading up to the ATM deposit was based on his personal knowledge and memory.[7] Quailes' admitted memory problems were a matter for the jury to weigh in assessing Quailes' credibility but did not affect the admissibility of his testimony.
(11) This Court has reviewed the record carefully and has concluded that Pettiford's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Pettiford's counsel has made a conscientious effort to examine the record and the law and has properly determined that Pettiford could not raise a meritorious claim in this appeal.
NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.
NOTES
[1] Penson v. Ohio, 488 U.S. 75, 83 (1988); McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 442 (1988); Anders v. California, 386 U.S. 738, 744 (1967).
[2] Sturgis was not implicated in the crime.
[3] The State had Abdullah's driver's license with her signature admitted into evidence, as well as a copy of Quailes' signature on a police record, in order for the jury to compare the codefendants' respective signatures with the handwriting on the forged check.
[4] Word v. State, 801 A.2d 927, 929 (Del. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
[5] Skinner v. State, 575 A.2d 1108, 1121 (Del. 1990).
[6] Tyre v. State, 412 A.2d 326, 330 (Del. 1980).
[7] See Del. Unif. R. Evid. 602 (2010).