IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LUIS M. CLARK, | § | |
| | § | No. 238, 2014 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | in and for Kent County |
| | § | Cr. ID 1207014755 |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: August 28, 2014
Decided: October 21, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices.

## O R D E R

This 21st day of October, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) On February 20, 2014, a Superior Court jury found the defendant-appellant, Luis Clark, guilty of Possession of a Firearm by a Person Prohibited, Possession of a Firearm During the Commission of a Felony, Assault in the Second Degree, and Reckless Endangering in the First Degree. The Superior Court sentenced Clark as a habitual offender on each conviction and imposed a total sentence of forty-six years at Level V

imprisonment followed by one year of probation. This is Clark's direct appeal.

(2) Clark's counsel on appeal has filed a brief and a motion to withdraw under Rule 26(c). Clark's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Clark's attorney informed him of the provisions of Rule 26(c) and provided Clark with a copy of the motion to withdraw and the accompanying brief. Clark also was informed of his right to supplement his attorney's presentation.

(3) In response to his counsel's motion and brief, Clark raised several issues for this Court's consideration. First, he contends that the prosecutor engaged in misconduct. Second, he asserts that his trial counsel was ineffective. Third, he contends that the complaining witness' testimony was not credible. Finally, he contends that the Superior Court erred by failing to ensure that Clark understood his counsel's stipulation allowing a DNA report into evidence without requiring the State to produce an expert witness to testify. The State has responded to Clark's points, as well as to the position taken by Clark's counsel, and has moved to affirm the Superior Court's judgment.

(4)     The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold:  (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(5)     The evidence presented by the State at trial reflects the following version of events:  On July 17, 2012, the victim, Oscar Ventura, his girlfriend and three children were in a Mazda minivan.  Ventura parked the minivan in a handicapped parking space in front of their apartment building so that his girlfriend could return to their apartment to retrieve their dirty laundry, which they were planning to take to the laundromat.  Their neighbor, Luis Clark, made a derogatory comment about Ventura parking in the handicapped spot.  Ventura told his girlfriend he was going to "whoop [Clark's] ass," but his girlfriend told him not to engage Clark.

(6)     After his girlfriend left the vehicle to return to their apartment, Ventura testified that he saw Clark approaching the driver's side door from the rear of his vehicle in a "tactical," "crouching" position with a silver gun

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

in his hand. Ventura grabbed a taser, which was attached to a set of brass knuckles, from his center console. As he opened the driver's side door, he pushed Clark backwards.[2] The two engaged in a physical fight. Ventura testified that Clark began hitting him in the face with the gun. During the struggle, the gun discharged and struck the driver's side door of the vehicle. The three children were still inside, although none of them was hurt. After the gun discharged, Clark walked away.

(7) During cross-examination, Ventura admitted that he was familiar with handguns because he and his two brothers, who were both in the army, liked to go to a local shooting range and practice. He testified that the cover photo on his Facebook page was a photo of guns. He denied owning any guns and stated that he only rented them when he went to the shooting range.

(8) An eyewitness, who had been at a business across the street, testified at trial that she saw two men (whom she described as a black man and a white man) fighting. She saw the black man holding a gun to the white man's neck. She did not see the white man strike the black man.

---

[2] Defense counsel presented the testimony of an emergency medical technician (EMT) who treated Ventura at the scene. The EMT testified that Ventura told him that he was driving on New Street when a man approached him, broke out his window, and then struck him in the head with the butt of a gun.

After the gun discharged, she saw the black man hand the gun to a different black man in a red shirt.

(9)  Police officers were dispatched to the scene in response to several phone calls reporting gunfire.  Approximately 20 officers responded. One officer testified that he reached the scene and found Ventura bloody and dazed.  After he was briefly interviewed, Ventura was taken to the hospital by ambulance.  Other officers went to Clark's girlfriend's apartment, which was the apartment next door to Ventura's.  They recovered bloody napkins from the apartment but found no sign of Clark.  Clark, in fact, was not found and arrested until several months after the incident.

(10)  Another officer testified at trial that he responded to the vicinity of the reported gunfire in order to establish a perimeter around the scene.  In the process, the officer encountered a man who turned his back upon seeing the officer.  The officer handcuffed the man, who turned out to be Clark's brother, Donald.  The officer searched Donald Clark and found two guns. One gun was silver and had blood on it.

(11)  The gun was sent to a laboratory for DNA testing.  The State admitted the DNA report at trial without objection.  No expert witness testified about the results.  The report reflected that swabs taken of the trigger and grip of the gun did not show any traces of blood.  There was a

5

mixture of other DNA evidence in those swabs from three individuals. One of those individuals was positively identified as Ventura. The other two contributors were unidentified, and no conclusion could be drawn about whether Clark was one of those contributors. Two other swabs found evidence of blood elsewhere on the handgun and also on the magazine. The DNA in that blood evidence was consistent with Ventura's DNA profile. Clark was excluded as a contributor of that DNA evidence.

(12) Clark presented the testimony of an eyewitness, Jerome Lands. Lands testified that he knew Clark and is a friend of Clark's mother. He testified that he saw Ventura park his van in the handicap spot and heard Clark made an insulting comment. He stated that Ventura exited the van with a taser in his hand and began to attack Clark. Lands stated that as Clark began to get the upper-hand in the fight, Ventura returned to the van and produced a silver handgun. As Clark and Ventura struggled, the gun discharged. Clark grabbed the gun and used it to strike Ventura in the head.

(13) Clark testified in his own defense at trial. He admitted striking Ventura with a gun but claimed that he acted in self-defense. Clark testified that he and Ventura got into a verbal altercation while Ventura was inside his van. Clark stated that, as he started to approach the van, Ventura got out and starting swinging at him. Clark felt an electric jolt with each punch that

6

Ventura landed. Clark testified that as he started to punch back, Ventura retreated to his van and retrieved a gun, which Clark tried to wrestle away from him. He stated that when the gun discharged, it startled both of them. Clark then was able to take the gun away from Ventura. He testified that he hit Ventura in the head several times just until Ventura was incapacitated; then he walked away. As Clark was approaching his apartment, he saw his brother walking toward him. He panicked and gave the gun to his brother, although he did not instruct his brother to dispose of the gun. Clark then went to his apartment, cleaned himself off and left the area.

(14) The first issue that Clark raises on appeal is a claim of prosecutorial misconduct. Although Clark contends that the prosecutor knowingly admitted false testimony, in fact, Clark's complaint is about statements made by the prosecutor in his closing rebuttal argument. The prosecutor's statement was made in response to an argument by defense counsel. Defense counsel argued in his closing that the presence of Ventura's DNA, but not Ventura's blood, on the grip and handle of the gun supported Clark's testimony that Ventura was the one who retrieved the gun. In rebuttal, the prosecutor stated: "[T]he State would suggest that there are other sources of DNA in addition to the blood, like the report says: Sweat, skin, hair. You saw the picture of Mr. Ventura with his long hair and the

7

condition he was in at the time. So there are plenty of sources where his DNA could have gotten on that gun."

(15) In fact, the DNA report did not state that sweat, skin, or hair were other possible sources of DNA besides blood. The report was silent on this point. Defense counsel, however, made no objection to the prosecutor's misstatement. Accordingly, because no objection was raised at trial, we will review this claim for plain error only.[3] Plain error exists when the error complained of is apparent on the face of the record and is so prejudicial to a defendant's substantial rights as to jeopardize the integrity and fairness of the trial.[4] The burden of persuasion is on the defendant to show prejudice.[5]

(16) In this case, the prosecutor's statement about the contents of the DNA report was incorrect. Nonetheless, we conclude that Clark has not met his burden of showing any prejudice. The prosecutor's misstatement was one isolated comment. The DNA report was in evidence, and the jurors could judge for themselves what the report said or did not say. Moreover, the DNA report was favorable to Clark. The prosecutor's misstatement did not undermine the favorable contents of the report. Accordingly, we find no

---

[3] Del. R. Evid. 103(d).

[4] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[5] *Brown v. State*, 897 A.2d 748, 753 (Del. 2006).

8

basis to conclude that the prosecutor's error affected Clark's substantial rights and jeopardized the integrity of the trial.

(17) Clark next argues that his trial counsel was ineffective for failing to object to this misstatement in the prosecutor's rebuttal. This Court, however, will not consider a claim of ineffective assistance of counsel for the first time on direct appeal.[6]

(18) Clark's third argument is that Ventura's trial testimony contained discrepancies and, therefore, was not credible. Specifically, Clark points out that Ventura stated at one point that he had a "perfect memory" of the events but also claimed not to remember having made certain statements. According to Clark, this inconsistent testimony proves that Ventura lied. The jury, however, is solely responsible for judging the credibility of the witnesses and resolving conflicts in the evidence.[7] To the extent there were any discrepancies in Ventura's testimony, it was entirely within the jury's purview to credit part of Ventura's testimony while rejecting other parts.[8] Under the circumstances, we find no merit to this argument.

(19) Finally, Clark contends that the Superior Court erred when it failed to conduct an adequate inquiry into Clark's understanding of defense

---

[6] *Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985).

[7] *Tyre v. State*, 412 A.2d 326, 330 (Del. 1980).

[8] *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982).

counsel's "stipulation"[9] with the prosecutor to admit the DNA report without requiring an expert to testify. We disagree. Defense counsel has the authority to manage the day-to-day conduct of the defense strategy, including making decisions about when and whether to object, which witnesses to call, and what defenses to develop.[10] The decision to waive the need for a foundational expert prior to the State's admission of the DNA report was a matter within the sound discretion of defense counsel. The trial court had no obligation to second-guess or contravene defense counsel's strategy and make sure that Clark agreed with his counsel's strategic choice. Indeed, it would not have been appropriate.[11] Accordingly, we hold that the trial court committed no error.

(20) This Court has reviewed the record carefully and has concluded that Clark's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Clark's counsel has made a conscientious effort to examine the record and the law and has properly determined that Clark could not raise a meritorious claim in this appeal.

---

[9] To the extent Clark is suggesting that he signed a formal stipulation allowing the DNA report into evidence, he is mistaken. Clark did sign a formal stipulation agreeing that he was a person prohibited from carrying a firearm. He did not sign any stipulation regarding the DNA report.

[10] *Zimmerman v. State*, 2010 WL 546971, *2 (Del. Feb. 16, 2010).

[11] *See State v. Brower*, 971 A.2d 102, 109 (Del. 2009) (holding that it would not have been proper for a trial court to contravene defense counsel's strategy by giving a jury instruction *sua sponte*).

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Randy J. Holland*
Justice