IN THE SUPREME COURT OF THE STATE OF DELAWARE

CHRISTOPHER BROWN, §
§
    Defendant Below, § No. 131, 2014
    Appellant, §
§
    v. § Court Below—Superior Court
§ of the State of Delaware,
STATE OF DELAWARE, § in and for New Castle County
§ Cr. ID No. 1212017553
    Plaintiff Below, §
    Appellee. §

Submitted: October 28, 2014
Decided: December 1, 2014

Before **STRINE**, Chief Justice, **RIDGELY**, and **VALIHURA**, Justices.

## **O R D E R**

This 1st day of December 2014, upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record below, it appears to the Court that:

(1) On October 3, 2013, after a three day trial, a Superior Court jury found the appellant, Christopher Brown, guilty of Burglary in the Second Degree, Criminal Trespass in the First Degree as a lesser included offense of Burglary in the Second Degree, Criminal Impersonation, two counts of Criminal Mischief, Theft, and Resisting Arrest. On February 27, 2014, the Superior Court found that Brown was a habitual offender and sentenced Brown as follows: (i) for Burglary in the Second Degree, ten years of Level V incarceration; (ii) for Criminal Trespass

in the First Degree, one year of Level V incarceration; (iii) for Criminal Impersonation, one year of Level V incarceration suspended for one year of Level III probation; (iv) for one count of Criminal Mischief, thirty days of Level V incarceration; (v) for the other count of Criminal Mischief, thirty days of incarceration suspended for one year of Level III probation; (vi) for Theft, one year of Level V incarceration suspended for one year of Level III probation; and (vii) for Resisting Arrest, one year of Level V incarceration suspended for one year of Level III probation. This is Brown's direct appeal.

(2) On appeal, Brown's appellate counsel ("Counsel") filed a brief and a motion to withdraw pursuant to Supreme Court Rule 26(c) ("Rule 26(c)").[1] Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Counsel informed Brown of the provisions of Rule 26(c) and provided Brown with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Brown of his right to identify any points he wished this Court to consider on appeal.

(3) Brown has raised two issues for this Court's consideration. First, he contends that the State failed to establish that he had the necessary intent to commit Burglary in the Second Degree. Second, he contends that the jury verdict sheet he received did not include an instruction for Criminal Trespass in the First

---

[1] Brown was represented by different counsel at trial.

2

Degree as a lesser included offense of the second count of Burglary in the Second Degree. The State has responded to the issues raised by Brown and moved to affirm the Superior Court's judgment.

(4) When reviewing a motion to withdraw and an accompanying brief, this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]

(5) At trial, the State offered evidence relating to two break-ins.[3] Shortly before 1 p.m. on December 28, 2012, Mary Campese was alone in her home in the 800 block of Woodlawn Avenue when she heard someone repeatedly ring the doorbell. Campese looked outside a window and did not recognize the man at the door. Campese was not expecting anyone and did not answer the door. She did set her alarm system.

(6) After setting the alarm, Campese looked outside again and did not see the man at the door. She looked outside other windows and saw the man in the

---

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

[3] The charges arising from each break-in were consolidated.

backyard looking at the door to the basement. She then called 911 and described the man to the 911 operator.

(7)     While Campese was on the phone with the 911 operator, she heard a banging and crash from the basement. The security alarm went off. Campese left the house when the police arrived. The police discovered that the basement door to the house had been kicked off its hinges. The basement door entry was checked for fingerprints, but no usable fingerprints were found.

(8)     One of the police officers responding to Campese's 911 call observed a man fitting the description Campese gave to the 911 operator approximately a block away from Campese's house. The officer detained the man, who identified himself as David Daniels, but turned out to be Brown. Brown was disheveled and sweating profusely. The officer took Brown to Campese's house and Campese identified Brown as the man she saw at her door and in her backyard, but stated that his clothes had changed.

(9)     The police found clothing in a trash can around the corner from Campese's house. The clothing consisted of a cabbie hat, tan pants, a black sweater, and black socks. A DNA analysis was performed on the clothes. Although the black socks had no DNA profile and testing on the pants was inconclusive, the DNA on the sweater was consistent with Brown's DNA profile

4

and the DNA profile of at least three other individuals and the DNA on the hat was consistent with Brown's DNA profile and at least two other individuals.

(10) The second break-in occurred on Broom Street on February 5, 2013. Aaron Poole returned to his residence around 1:15 p.m. and saw that the back door was kicked in. Poole called 911.

(11) While on the phone with a 911 operator, Poole observed a man leave the house with a green bag. At trial, Poole identified Brown as the man he saw leaving his house. Poole followed Brown down Broom Street and pointed him out to the police when they arrived on Broom Street.

(12) When the police cruiser pulled next to Brown, he dropped the green bag and began to run away. The police stopped Brown and then tried to handcuff him. After a struggle, Brown was handcuffed. The green bag contained toiletries and jewelry belonging to Poole's mother.

(13) Brown testified on his own behalf at trial. According to Brown, he went to the Woodlawn Avenue house with a woman named Patty who wanted to confront someone living in the house. Patty rang the doorbell and banged on the basement door. Brown kicked the basement door open, which set off the alarm. Brown was arrested, but Patty escaped. Brown testified that the clothes found in the trash can belonged to him. He also testified that he did not give his real name

5

to the police because he did not have identification, he thought the police might let him go, and he did not want the police to know his real name.

(14) As far as the Broom Street house, Brown claimed that he was high on heroin and needed to clean up after soiling himself. Brown kicked open the door and used a bathroom to clean up. Before leaving the house, Brown took some toiletries from the bathroom as well as several small boxes in an adjoining bedroom and put them in a bag. Brown then left the house with the bag of items he had taken and was arrested.

(15) The jury found Brown guilty of Criminal Trespass in the First Degree as a lesser included offense of Burglary in the Second Degree, Criminal Mischief, and Criminal Impersonation in connection with the Woodlawn Avenue house and Burglary in the Second Degree, Criminal Mischief, Misdemeanor Theft, and Resisting Arrest in connection with the Broom Street house. On appeal, Brown contends that the State failed to establish that he had the necessary intent to commit Burglary in the Second Degree and that the jury verdict sheet he received did not include an instruction for Criminal Trespass in the First Degree as a lesser included offense of the second count of Burglary in the Second Degree (the Broom Street house).

(16) In reviewing whether there was sufficient evidence supporting Brown's conviction for Burglary in the Second Degree, this Court must "determine

6

whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of all the elements of the charged crime."[4]  A conviction for Burglary in the Second Degree requires proof beyond a reasonable doubt that a person knowingly entered or remained unlawfully in a dwelling "with intent to commit a crime therein."[5] "The 'intent to commit a crime therein' may be formed prior to the unlawful entry, be concurrent with the unlawful entry or such intent may be formed after the entry while the person remains unlawfully."[6]  A person is guilty of theft when they take, exercise control over, or obtain property from another person with the intent to deprive that person of that property or to appropriate the property.[7]

(17)  Viewing the evidence in the light most favorable to the State, a reasonable jury could find Brown guilty of Burglary in the Second Degree beyond a reasonable doubt with respect to the Broom Street house.  The record reflects that Brown kicked open the back door of the house on Broom Street, entered the house, and took toiletries and jewelry from the house.  Brown's testimony that he entered the Broom Street house with the intent to clean up and without the intent to commit

_____

[4] *Lecates v. State*, 987 A.2d 413, 418 (Del. 2009).

[5] 11 *Del. C.* § 825(a)(1).

[6] 11 *Del. C.* § 829(e).

[7] 11 *Del. C.* § 841(a).

theft does not mean the State failed to establish Brown had the necessary intent for Burglary in the Second Degree.

(18) First, Brown's denial of any intent to commit theft in the Broom Street house presented a credibility issue for the jury to resolve and the jury could reject Brown's statement that he did not enter the Broom Street house with the intent to commit theft.[8] Second, even if Brown did not intend to commit theft when he entered the house, he could have formed the necessary intent after entering the house.[9] Brown admitted that he deliberately took property from the house. Based upon the trial record, a reasonable jury could conclude that Brown was guilty of Burglary in the Second Degree beyond a reasonable doubt with respect to the Broom Street house.

(19) The jury verdict form that Brown relies upon to support his claim that the form did not include Criminal Trespass in the First Degree as a lesser included offense of Burglary in the Second Degree with respect to the Broom Street house is not the jury verdict form that was given to the jury. The record reflects that the jury verdict form filled out by the jury and signed by the foreperson includes

---

[8] *Cubbage v. State*, 2003 WL 21488129, at *2 (Del. June 25, 2003) (recognizing that jury as determiner of witness credibility could reject defendant's assertions and accept contrary testimony of other witnesses); *Tyre v. State*, 412 A.2d 326, 330 (Del. 1980) ("It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony.").

[9] 11 *Del. C.* § 829(e) (providing that "intent to commit a crime therein…may be formed after the entry while the person remains unlawfully.").

Criminal Trespass in the First Degree as a lesser included offense for both counts of Burglary in the Second Degree (the Woodlawn Avenue house and the Broom Street house).[10] Accordingly, this claim is without merit.

(20) This Court has reviewed the record carefully and has concluded that Brown's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Brown's counsel has made a conscientious effort to examine the record and the law and has properly determined that Brown could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Karen L. Valihura
Justice

---

[10] Appendix to the State's Response to Rule 26(c) Brief, B3-B4.