IN THE SUPREME COURT OF THE STATE OF DELAWARE

KERON S. FLOWERS, § 
 § No. 451, 2024
    Defendant Below, §
    Appellant, § Court Below—Superior Court
 § of the State of Delaware
    v. §
 § Cr. ID No. 2203013243 (N)
STATE OF DELAWARE, §
 §
    Appellee. §

Submitted: December 17, 2025
Decided: February 17, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1) A Superior Court jury found the appellant, Keron S. Flowers, guilty of home invasion—first-degree burglary, attempted first-degree robbery, possession of a firearm during the commission of a felony ("PFDCF"), wearing a disguise during the commission of a felony, second-degree conspiracy, and third-degree assault. The Superior Court sentenced Flowers to thirty-eight years of Level V incarceration, suspended after nine years for decreasing levels of supervision. This is Flowers' direct appeal.

(2)     The evidence presented at trial established that Gary Toller and Candace Ware, who both struggled with substance abuse, wished to purchase drugs on March 24, 2024.  They arranged with a man they had previously purchased drugs from and knew as Tyler Robinson to come to their house that day with drugs.  Tyler Robinson's real name was Isaiah Boykin.

(3)     Shortly after 11 a.m. on March 24th, surveillance camera footage from a house across the street showed Boykin arriving at Toller and Ware's house in a silver Hyundai SUV.  Boykin was accompanied by another man that the State argued was Flowers.  The camera footage showed Boykins going into the house briefly, coming back out to the car, and returning to the house with Flowers, who was wearing a tan jacket.  According to Ware, Boykins asked her if Flowers could come in to use the bathroom and she agreed.

(4)     Ware testified that she did not know what Flowers looked like because he was wearing a mask.  Everyone sat in the living room for a few minutes until Toller went to the back bedroom to get the money for the drugs.  Flowers followed him.  Toller testified that while he was in the bedroom Flowers pointed a gun with a red laser at him, demanding to know where the money was.  Flowers and Toller started to fight, and Flowers tried to choke Toller.

(5)     Upon hearing a noise, Ware ran back to the bedroom and saw Flowers, with a gun, on top of Toller on the bed.  Flowers demanded the location of the safe

2

and the money in the safe. Toller and Ware had a safe in the bedroom where Toller kept money that he had recently withdrawn from his 401(k). Toller testified that he or Ware had previously mentioned the 401(k) money to Boykin.

(6) Ware went toward the safe to try and conceal it. Boykin, who had followed her to the bedroom, put a gun with a laser to her head and demanded to know the location of the money. To distract Boykin and Flowers from the safe, Ware said the money was downstairs. Boykin began pushing her out of the bedroom. As they struggled, Boykin placed a pillow over Ware's head and hit her in the head with the gun. Ware got away from Boykin, and ran to the front door. Toller escaped Flowers and also ran to the front door.

(7) Camera footage showed Ware falling on her hands and knees as she fled the house. Boykin appeared briefly behind Ware before going back into the house. Flowers and Toller then came out of the house, and Flowers got in the driver's seat of the Hyundai. Before Flowers drove away, Toller punched out the rear window of the Hyundai. Shortly after Toller and Ware went back into the house, Boykin left the house, went to the back, and then came to the front and walked away.

(8) Ware called 911, and police were dispatched to the scene. Shortly after 11:30 a.m. the 911 dispatcher put out a request for officers to be on the lookout for a silver Hyundai SUV with a partial tag containing the letters "PC" that was occupied by two black males. New Castle County Police Detective Dominick Mills, who was

3

traveling on northbound 295, took the Landers Spur exit approaching Landers Lane and saw a vehicle matching the description ahead of him. He noticed that the rear window of the Hyundai was shattered.

(9) Detective Mills followed the Hyundai and radioed Officer Joseph Shanahan for assistance. They caught up with the Hyundai on Railroad Avenue, where they saw one occupant leave the Hyundai and run toward Holcomb Lane. They stopped the Hyundai and ordered the driver to get out. When asked if he saw the driver in the courtroom, Officer Shanahan identified Flowers. Flowers did not have a firearm, drugs, or cash on him when he was stopped.

(10) Detective Mills assisted with a K-9 search of the area where the SUV passenger had fled. During the search, police found a loaded Smith & Wesson caliber handgun with a laser, which they swabbed for DNA and latent prints.

(11) The police obtained search warrants for the Hyundai and Flowers' person. In the search of the Hyundai, the police recovered a tan, bloodstained jacket with a black face mask in one of the pockets, two cell phones, latent fingerprints, and bloodstains. Police also collected bloodstained cargo pants and boots, which were swabbed for DNA, from Flowers as well as a buccal DNA swab.

(12) At Toller and Ware's house, police observed broken glass in the driveway and bloodstains throughout the house. Samples of the bloodstains were collected and later determined to be Ware's blood. Police did not find any money

4

or drugs in the house, but did find drug paraphernalia. They did not look in the safe. Police later arrested Boykin at a motel and collected a cell phone.

(13) Ware went to the hospital for treatment of her head injury. Toller had bruises and a bleeding ear, but did not go to the hospital. Both Toller and Ware identified Boykin as one of their assailants in a photo array, but Ware was less certain.

(14) Testing revealed that one of the latent fingerprints in the Hyundai belonged to Boykin. A swabbing of a bloodstain from the jacket recovered in the Hyundai matched Toller's DNA, a swab of Flowers' pants matched Ware's DNA, and a swab of the recovered firearm matched Ware's DNA. The cell phone collected from the motel showed incriminating communications between Boykin and the victims and between Boykin and Flowers. Boykin had texted Flowers that he thought "they might have found the grip," which a police officer testified is a word used to describe a firearm.[1] Boykins also conducted internet searches for "DELJIS wanted," "Keron Flowers," "County Police," "Keron Flowers robbery," and "Newark crime."[2] In addition, an FBI agent testified that Boykin's cell phone was utilizing a cell tower in the vicinity of Toller and Ware's house around the time of

---

[1] App. to Br. Pursuant to Rule 26(c) at A1039 (hereinafter A__).
[2] A1039-41.

5

the crime and was later utilizing a tower near where the Hyundai was stopped on Railroad Avenue. Flowers elected not to testify.

(15) The jury found Flowers guilty of home invasion—first degree burglary, attempted first-degree robbery, PFDCF, second-degree conspiracy, wearing a disguise during the commission of a felony, and third-degree assault. The jury found Flowers not guilty of strangulation. Following a pre-sentence investigation, the Superior Court sentenced Flowers as follows: (i) for home invasion—first-degree burglary, fifteen years of Level V incarceration, suspended after six years for decreasing levels of supervision; (ii) for PFDCF, fifteen years of Level V incarceration, suspended after three years for two years of Level III probation; (iii) for wearing a disguise, five years of Level V incarceration, suspended for one year of Level III probation; (iv) for second-degree conspiracy, two years of Level V incarceration, suspended for one year of Level III probation; and (v) for third-degree assault, one year of Level V incarceration, suspended for one year of Level III probation. The attempted first-degree robbery conviction merged with the home invasion conviction.

(16) On appeal, Flowers' appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Flowers of the provisions of Rule 26(c) and

6

provided Flowers with a copy of the motion to withdraw and the accompanying brief.

(17) Counsel also informed Flowers of his right to identify any points he wished this Court to consider on appeal. Flowers submitted points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(18) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[3]

(19) We construe Flowers' points on appeal as follows: (i) the evidence presented at trial was insufficient to sustain his convictions; (ii) the prosecutor falsely stated that Flowers' DNA was on the gun found near Railroad Avenue; (iii) the judge failed to dismiss the case, address conflicting testimony of the witnesses, deem a video prejudicial and inadmissible; and (iv) the jury was tainted and only found him guilty of first-degree burglary, not home invasion. After careful review, we find no merit to these arguments.

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

7

(20)   Generally, we review an insufficiency of evidence claim to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt.[4] Because Flowers did not move for a judgment of acquittal in the Superior Court, we review this claim for plain error.[5] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6]

(21)   There was sufficient evidence to sustain Flowers' convictions for home invasion—first-degree burglary,[7] PFDCF,[8]  wearing a disguise during commission

---

[4] *Farmer v. State*, 844 A.2d 297, 300 (Del. 1990).

[5] Supr. Ct. R. 8; *Swan v. State*, 820 A.2d 342, 358 (Del. 2003).

[6] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[7] 11 *Del. C.* § 531 (defining attempt to commit a crime); *id.* § 826(b)(1) (defining home invasion as when a person knowingly enters or remains unlawfully in an occupied dwelling with the intent to commit a crime and when entering, occupying, or leaving the dwelling commits or attempts to commit certain crimes, including first-degree robbery); *id.* §§ 831, 832 (providing that a person commits first-degree robbery when, in the course of attempting to commit theft, he uses or threatens the immediate use of force upon the victim with the intent to prevent or overcome resistance to the taking of property and in the course of this crime causes physical injury to the victim or displays a deadly weapon).

[8] *Id.* § 1447A(a) § (defining PFDCF as the possession of a firearm during the commission of a felony).

8

of a felony,[9] second-degree conspiracy,[10] and third-degree assault.[11]  This evidence included: (i) the victims' testimony about Boykin and a masked man demanding money from them in their house while armed, (ii) photographs of injuries to Toller's head and ear, (iii) camera footage of Boykin and Flowers arriving at the victim's house in a silver Hyundai and Flowers leaving the house in the Hyundai , (iv) police testimony about stopping Flowers less than thirty minutes after he left the victims' house in a silver Hyundai with a missing rear window and seeing a passenger run away from the vehicle, (v) the gun with Ware's DNA that was found in the area where the Hyundai passenger fled, (vi) the face mask in the pocket of the tan jacket found in the Hyundai, and (vii) the presence of Boykin's fingerprint in the Hyundai, Ware's DNA on the tan jacket, and Ware's DNA on Flowers' pants.   Flowers emphasizes the absence of his fingerprints and DNA from the gun and the victims' house but fails to address the other overwhelming evidence of his involvement in the crimes.

(22)   Flowers challenges the credibility of the victims, accusing them of lying and pointing to inconsistencies between their previous statements to police and

---

[9] *Id.* § 1239(a) (providing that a person who wears a mask or other disguise while committing a felony is guilty of wearing a disguise during the commission of a felony).

[10] *Id.* § 512 (providing that a person is guilty of second-degree conspiracy when, intending to promote or facilitate commission of a felony, he agrees with another person that he or the other person will engage in conduct constituting the commission or attempted commission of a felony and he or the other person commits a overt act in pursuance of the conspiracy).

[11] *Id.* § 611(1) (defining third-degree assault as the intentional or reckless causing of physical injury to another person).

trial testimony. Flowers' counsel extensively cross-examined Toller and Ware at trial about inconsistencies in their testimony as well as their substance abuse issues. As the sole trier of fact, the jury was responsible for determining witness credibility and resolving any conflicts in witness testimony.[12] It was within the jury's discretion to accept the testimony of Toller and Ware, which was consistent with the camera footage and forensic evidence, about Flowers' actions on March 24, 2024.[13]

(23) In arguing that he could not have committed home invasion—first-degree burglary because Toller and Ware voluntarily allowed him into their house, Flowers ignores the elements of home invasion. A person is guilty of home invasion—first-degree burglary when "the person knowingly enters or *remains unlawfully* in an occupied dwelling with intent to commit a crime therein" and "in effecting entry or when in the dwelling or immediate flight therefrom, the person or another participant in the crime engages in the commission of, or attempts to commit," among a list of other felonies, first-degree robbery.[14] Toller and Ware voluntarily allowed Flowers into their house, but Flowers remained unlawfully when he tried to rob Toller at gunpoint and assaulted him. Flowers also criticizes the police failure to verify that the victims' safe contained money, but this was unnecessary for Flowers to be convicted of home invasion—first-degree burglary,

---

[12] *Tyre v. State*, 412 A.2d 326, 330 (Del.1980).
[13] *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982).
[14] 11 *Del. C.* § 826(a), (b)(1) (emphasis added).

which includes attempts to commit felonies like first-degree robbery.[15]  Flowers' challenges to the sufficiency of the evidence are without merit.

(24)   We next turn to Flowers' claim that the prosecutor falsely stated at trial that Flowers' DNA was on the gun found at Railroad Avenue.  Flowers does not identify when the prosecutor supposedly made this misstatement, and we have not located any support for this claim in the trial transcripts.  Accordingly, we must conclude that it is without merit.

(25)   Flowers also contends that the Superior Court judge erred by failing to (i) dismiss the case when a witness failed to appear on the first day of trial, (ii) address witness' conflicting statements at trial, and (iii) deem the surveillance camera footage of the exterior of the victims' house prejudicial and inadmissible. These claims are without merit. Flowers does not identify the witness who failed to appear on the first day of trial or explain why the absence of that witnesses prejudiced his defense.  As to any conflicting statements by the witnesses, the jury was responsible for resolving conflicts in the testimony.[16]  Flowers did not object to admission of the camera footage at trial and has not established any basis for *sua sponte* exclusion of that footage.

---

[15] *Id.* 826(b).
[16] *See supra* ¶ 22.

(26) The record does not support Flowers' claims concerning the jury. Flowers contends that the jury was tainted by the nature of the case as illustrated by a juror who stood up in the middle of trial and asked to be dismissed. Flowers mischaracterizes the record. After lunch on the first day of trial, the judge advised counsel that an alternate juror had mentioned to a court security officer before lunch that she had a relative with substance abuse issues and that the case was bothering her emotionally. The judge then questioned the alternative juror, in the presence of counsel, and repeated the *voir dire* question concerning whether she had strong feelings about drug use that would affect her ability to render an impartial verdict. The alternate juror expressed uncertainty based on her personal circumstances, but also stated, when asked, that she had not discussed it with her fellow jurors. With the agreement of counsel, the judge excused the alternate juror. The record does not support Flowers' claim of a tainted jury.

(27) As to Flowers' contention that the jury found him guilty of first-degree burglary, not home invasion, he is mistaken. Although the judge only referred to "burglary first degree" in asking for the jury's verdict "[a]s to count 1,"[17] count 1 was defined in the jury instructions and verdict form as "HOME INVASION – BURGLARY FIRST DEGREE."[18] The jury put an "X" next to the "Guilty" line for

---

[17] A1334.
[18] A1362-63, A1411.

Flowers under "COUNT I. Home Invasion – Burglary First Degree" in the jury verdict form.

(28)  Finally, Flowers does not contend on appeal that his constitutional right to a speedy trial was violated, but he and Boykin did move to dismiss the case based on violation of their speedy trial rights in the Superior Court.   The Superior Court denied their motions, and Boykin argued on appeal that Superior Court erred in denying his motion.  Applying the four factors set forth in *Barker v. Wingo*,[19] this Court concluded that Boykin's right to a speedy trial was not violated and affirmed the Superior Court's judgment.[20]   The record does reflect any basis for a different result here.

(29)  This Court has reviewed the record carefully and has concluded that Flowers' appeal is wholly without merit and devoid of any arguably appealable issue.  We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Flowers could not raise a meritorious claim in this appeal.

---

[19] *Barker v. Wingo*, 407 U.S. 514 (1972).
[20] *Boykin v. State*, 2025 WL 3674660 (Del. Dec. 17, 2025)

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is affirmed.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice