**Roy Luther RICHARDSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 13, 1981.

Decided Oct. 22, 1981.

David M. Lukoff, Public Defender, Wilmington (argued) and Richard E. Fairbanks, Jr., Asst. Public Defenders, Wilmington, for defendant-appellant.

Fred S. Silverman (argued), Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C. J., and QUILLEN and HORSEY, JJ.

PER CURIAM:

The defendant was convicted in a single trial of one misdemeanor and five felonies, including the murder in the first degree of his mother-in-law. In a prior opinion in this case [*Richardson v. State*, Del.Supr., 401 A.2d 75, 77 (1979)], this Court, in light of an affidavit by a new expert psychologist, in effect directed the Superior Court to give, upon application, reconsideration to the second motion for a new trial. The Court had summarily denied that motion without a hearing and without giving any reasons for its decision. After remand, a renewed application for a new trial was made on the ground of newly discovered evidence. A hearing was held. The Trial Judge in a detailed letter opinion denied the motion. The sole issue raised in this appeal is whether such denial constitutes an abuse of discretion. In our judgment, no such abuse has been shown and we therefore affirm.

Over fifty-six years ago, in *State v. Lynch*, Del. O. and T., 128 A. 565, 568 (1925), Chief Justice Pennewill said:

"There are certain well settled rules of law applicable to such evidence, among which are the following:

In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial, and could not have been discovered before by the exercise of due diligence; (3) that it is not merely cumulative or impeaching."

The same considerations remain applicable today.

In our prior opinion, we reviewed the history of the belated production of the psychological test protocols which partially underlay the testimony of a State's psychologist. We will not review the delayed production again except to say the delay was the mixed responsibility of the State and the defense. We emphasize to the bar the obvious importance of making a record and of obtaining discovery orders in matters considered important. We note, as did the Trial Judge, that, even after the disclosure of the protocols and effective cross-examination at trial, the defense made no effort to recall either of their two psychologists. In our view of the record, including the record made on the instant motion, it seems clear that the defense could have elected to further attack the State's expert by more counter expert testimony. The substance of the interpretation by the State's expert of the test protocols was raised and experts were available to the defense. We do not suggest there was any trial error of judgment on the defense side. But new trials cannot be granted to permit the side suffering an adverse verdict to present its case in a different way. In our judgment, the defendant was not in substance unfairly treated with regard to the availability of psychological evidence.

Moreover, the expert proffered in the posttrial motions, while adding specific and useful testimony as to the Minnesota Multiphasic Personality Inventory did not refute the ultimate diagnosis of the State's psychologist. Granting a partial refutation and acknowledging the expert arena is somewhat unusual, the "new evidence" is nonetheless largely of a cumulative and impeaching nature.

But most importantly, we are independently convinced, as was the Trial Judge, that the "new evidence" would not change the result. Not only did the jury have before it the clearly drawn conflict in expert opinion, including the complete defense refutation of the opinion of the State's psychologist, but the jury also had the underlying facts of the case, including the testimony of the defendant. The evidence of the basic facts shows a preexisting family dispute with the defendant's mother-in-law protecting her daughter in the daughter's marital separation from the defendant. The defendant appeared uninvited one evening inside the home of his mother-in-law. After receiving no satisfaction about the whereabouts of his wife, refusing to leave, tearing out the telephone to prevent the summoning of the police, the defendant shot his mother-in-law three times. His testimony at trial is a lucid, shot-by-shot account demonstrating an unequivocal and deliberate intent to kill his mother-in-law. The defendant then shot and wounded a male companion of his mother-in-law, who was a trial witness. The jury, at the time sitting in a capital trial, found the defendant guilty of first degree murder. Given the vivid testimony of the killing, the complete conflict in the testimony of many experts on the issue of mental illness, and the jury's independent exposure to the defendant's testimony, it is completely unlikely that the now recorded testimony of the new defense expert would change the result.

There was no abuse of discretion. The decision of the Superior Court denying the motion for a new trial is affirmed.