Franklin D. LLOYD & Christina Lloyd,
Defendants Below, Appellants,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 9, 1987.
Decided: Dec. 4, 1987.

Brian J. Bartley, Asst. Public Defender, Wilmington, for defendants below, appellants.

Richard E. Fairbanks, Jr. (argued) and Loren C. Meyers, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before CHRISTIE, C.J., and HORSEY and HOLLAND, JJ.

CHRISTIE, Chief Justice:

Following a jury trial in Superior Court, appellant Franklin Lloyd was convicted of trafficking in methamphetamine, conspiracy second degree, and maintaining a dwelling for keeping controlled substances. Appellant Christina Lloyd was convicted of conspiracy second degree and maintaining a dwelling for keeping controlled substances but was acquitted of the trafficking charge.

After sentencing, the Superior Court denied a motion for a new trial, and the Lloyds appealed. Appellants (the Lloyds) challenge the rulings of the Superior Court arguing that the trial court erred: (a) when it refused to exclude as hearsay the electronically recorded conversations between Michael Layton and Paula Simmons; (b) when it denied the appellants' motion for a judgment of acquittal; and (c) in concluding that the sale or delivery of a substance weighing 27.45 grams including 2.77 grams of methamphetamine satisfied the quantitative element of 15 grams of methamphetamine, including its salt, isomer or salt of an isomer established by 16 *Del.C.* § 4753A(a)(4) to support a conviction of trafficking in methamphetamine.

Appellants also contend that the trial court abused its discretion in denying appellants' motion for a new trial on the basis that alleged newly available testimony did not constitute newly discovered evidence. We conclude that the trial court committed no legal errors or abuses of discretion and, therefore, affirm the decisions of the Superior Court.

The pertinent facts in this case involve the activities of the appellants and the activities of Michael Layton, a cooperating witness, and of Paula Simmons, the Lloyds' codefendant. After his arrest for possession of marijuana in December, 1984, Michael Layton agreed to become a cooperating witness for a joint federal-state task force investigating drug operations in New Castle County. As a cooperating witness, Layton was asked to obtain information and to purchase drugs under the direction of agents of the Federal Bureau of Investigation. He was also expected to testify at trials if his activities were relevant.

In February, 1985, Paula Simmons, the codefendant in the present case, contacted Layton to inquire whether he would be interested in purchasing methamphetamine from her. Layton reported this contact to the FBI agents and was told to enter into the proposed drug transaction.

Layton telephoned Simmons on February 4, 1985, and offered to buy methamphetamine. Simmons stated that she did not have the drugs but would be able to obtain them. Arrangements were then made to meet that evening at Simmons' home.

Directly before Layton met with Simmons, he and his pickup truck were searched by FBI agents who determined that he was not in possession of any drugs. The agents fitted Layton with a body recorder in order to electronically tape record his conversations with Simmons. They then activated the recorder to begin taping. He was also given money to buy the drugs. Layton, followed by task force members, then drove his truck to Simmons' residence.

Upon Layton's arrival and in his presence, Simmons telephoned the Lloyd residence and told the person answering the phone to tell his mother that she would be coming to their house. Layton, Simmons, and Simmons' young child then left in Layton's truck which was again followed by a task force member. While riding in the truck, Layton asked Simmons several times if she had any drugs in her possession and Simmons consistently replied that she did not.

Layton, Simmons, and her child, drove to a convenience store approximately one mile from the Lloyd house. Here Layton was to wait while Simmons drove his truck to pick up the drugs from the Lloyds. Before exiting the truck, Layton gave Simmons $1,000 to purchase the drugs and $30 for her to keep for arranging the sale.

Layton, under surveillance, remained at the store while Simmons, also under surveillance, drove to the Lloyd residence. A task force member observed Simmons and her child arrive at and enter the Lloyd home. About two minutes after Simmons

entered the house, the task force observer saw a light go on in an upstairs window and a shadow cross the window shade. The observer was unable to determine the gender or age of the person who walked past the window but testified that the figure was not that of a young child. Simmons exited the house thirteen minutes after her arrival and, still under surveillance, drove back to the convenience store.

When Simmons arrived at the store parking lot, Layton got into the truck and Simmons handed him a small plastic bag. Layton held the bag, smelled the contents, and remarked that it appeared to be an ounce of drugs. Simmons stated that she received the bag containing the drugs from Mr. Lloyd after she had seen him go upstairs to get it from Mrs. Lloyd.

At Simmons' request, Layton drove her back to the Lloyd residence where she had left her child. Layton, still under surveillance, then drove directly to a prearranged site where he again met with the FBI agents. Layton handed over the plastic bag containing the drugs and the agents turned off and removed the body recorder and the recorded tape within it.

The tape recorded statements which were admitted as evidence against the Lloyds included conversations between Michael Layton and Paula Simmons which took place: in Simmons' home; in Layton's pickup truck as they drove to the convenience store; in the pickup truck after Simmons returned from the Lloyd home; and in the pickup truck as Layton drove Simmons back to the Lloyd residence.

## I.

 Under Delaware Rule of Evidence 801(d)(2)(E) [1] a statement which would normally be considered hearsay and therefore would be inadmissible as evidence, may be admitted under an exception to the rule if the statement is offered against a party and is made by the party's co-conspirator during the course and in furtherance of the conspiracy. A statement qualifies as an exception if the offering party can show by a preponderance of the evidence that: 1) a conspiracy existed; 2) the co-conspirator and the defendant against whom the statement is offered were members of the conspiracy; and 3) the statement was made during and to further the conspiracy. *Carter v. State*, Del.Supr., 418 A.2d 989, 994 (1980).

 The Lloyds contend that the tape recorded statements made by Simmons to Layton did not meet the test outlined above and, therefore, should not have been admitted into evidence under the co-conspirator exception to the hearsay rule. They initially argue that D.R.E. 801(d)(2)(E) requires the trial court to find that the existence of a conspiracy must be established by independent evidence and without using the proffered hearsay statements. The Lloyds contend that the trial court erred when it considered the tape-recorded hearsay statements in determining whether a conspiracy existed.

The United States Supreme Court recently held that Federal Rule of Evidence 104(a) "... allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege," in determining the admissibility of evidence. *Bourjaily v. U.S.*, 483 U.S. ——, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987). Under that ruling, a trial court, when deciding whether a conspiracy exists under F.R.E. 801(d)(2)(E), need not limit its consideration to only independent evidence but may also consider the proffered hearsay statement. *Id.*

Delaware's Rules 104(a) [2] and 801(d)(2)(E) closely track the corresponding Federal Rules 104(a) and 801(d)(2)(E) respectively.

---

**1.** A statement is not hearsay if offered against a party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy; provided that the conspiracy has first been established by the preponderance of the evidence to the satisfaction of the court." D.R.E. 801(d)(2)(E).

**2.** "Preliminary questions concerning the qualifications of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of paragraph (b) of this rule. In making its determination it is not bound by the rules of evidence expect those with respect to privilege." D.R.E. 104(a)

D.R.E. 104 comment, D.R.E. 801 comment. This Court hereby adopts the reasoning found in the *Bourjaily* case and holds that the trial court may consider the proffered hearsay statement when making a determination as to the existence of a conspiracy.

■ The Lloyds next argue that the trial court failed to determine that a conspiracy actually existed between Simmons and the Lloyds. They claim that the trial court erroneously ruled that the State was not required to establish that Simmons and the Lloyds were co-conspirators. However, even if the trial court enunciated an incomplete standard or failed to specifically articulate all three elements of the co-conspirator exception, as listed above, the record shows that the trial court did not err in its evidentiary ruling since the evidence clearly established that: 1) a conspiracy existed; 2) the Lloyds and Simmons were members of the conspiracy; and 3) Simmons' statements were made during and in furtherance of the conspiracy.

Therefore, the trial court did not err in admitting into evidence the tape-recorded statements between Layton and Simmons, and we affirm the decision of the Superior Court.

## II.

■ The Lloyds maintain that the evidence presented was insufficient to support their convictions and therefore the trial court erred in denying their motion for a judgment of acquittal. They contend that the recorded statements were inadmissible and that the only other evidence implicating the Lloyds was the fact that Simmons traveled to the Lloyd residence immediately prior to delivering the drugs to Layton. We hold that both of these contentions are without merit.

As previously stated, the tape-recorded statements between Layton and Simmons were properly admitted into evidence under the co-conspirator hearsay exception. These statements, taken together with the independent evidence presented, support the trial court's determination that sufficient evidence existed to establish *inter alia,* that:

(1) Layton was not in possession of any drugs before meeting Simmons;

(2) In Layton's presence, Simmons telephoned the Lloyd home and told the person answering the phone to tell his mother that Simmons was coming to their house;

(3) Simmons was not in possession of any drugs before entering the Lloyd home;

(4) Simmons referred to her drug supplier as "Chris" and "Chrissy" (Christina Lloyd is a defendant);

(5) Simmons and Layton were both under surveillance from the time they left Simmons' home until after the delivery of the drugs by Simmons to Layton. There were no opportunities for Simmons or Layton to obtain the drugs en route to or from the Lloyd residence;

(6) Simmons made arrangements to purchase the drugs from Christina Lloyd;

(7) Upon arrival at the Lloyd home, Simmons saw Franklin Lloyd go upstairs to the bedroom to obtain the drugs;

(8) Simmons later confirmed that she had received the bag containing drugs from Mr. Lloyd after he had gone upstairs to get it from Mrs. Lloyd;

(9) Simmons delivered a plastic bag to Layton after leaving the Lloyd home;

(10) After driving Simmons back to the Lloyd house, Layton delivered a plastic bag to FBI agents which contained a mixture of methamphetamine weighing over 27 grams.

The tape-recorded statements, the evidence independent of the recorded statements, and all the reasonable inferences drawn therefrom, when viewed in the light most favorable to the prosecution, form a basis for the trial court's ruling that there was sufficient evidence to support the jury's verdict. Therefore, the trial court did not err in denying the motion for a judgment of acquittal, and we affirm the ruling of the Superior Court.

## III.

■ The Lloyds' third challenge to the trial court's ruling contends that the trial court misinterpreted the Delaware Uniform

Controlled Substances Act, 16 *Del.C.* ch. 47. Section 4753A(a)(4) of that chapter provides that:

> Any person who, on any single occasion, knowingly sells, manufactures, delivers or brings into this State, or who is knowingly in actual or constructive possession of, 15 grams or more of methamphetamine, including its salt, isomer or salt of an isomer thereof, or of any mixture containing any such substance, as described in § 4716(d)(3) of this title [3] is guilty of a class B felony, which felony shall be known as "trafficking in methamphetamine."

The Lloyds maintain that the statute on its face reveals that a violation does not occur until the amount of methamphetamine *alone* exceeds the threshold weight of 15 grams. They argue that since only 2.77 grams of the powder was pure methamphetamine, the quantitative element of 15 grams of methamphetamine was not satisfied and therefore the trafficking charge was not proven.

This Court has previously ruled in an unreported order that possession of 15 grams or more of methamphetamine or *15 grams of any mixture containing methamphetamine* supports a conviction of trafficking in violation of 16 *Del.C.* § 4753A(a)(4) (emphasis added). This interpretation is based on the plain meaning of the words used in the statute and is analogous to this Court's interpretation of 16 *Del.C.* § 4753A(a)(3) which established the elements of the crime of trafficking in heroin. *Shy v. State*, Del.Supr., 459 A.2d 123, 125 (1983).

Subsection (3) of § 4753A(a) states that a person is guilty of trafficking in heroin if in "... possession of 8 grams or more of ... heroin ... or 8 grams or more of any mixture containing any such substances...." According to subsection (4) of the same section a person is guilty of trafficking in methamphetamine if in "... possession of, 15 grams or more of methamphetamine ... or of any mixture containing any such substance...."

The Lloyds contend that this slight difference in phrasing is presumptive evidence of the legislature's intent that a mixture weighing at least 15 grams must contain at least 15 grams of pure methamphetamine to sustain a conviction for trafficking in methamphetamine. This interpretation renders the mixture language of § 4753A(a)(4) meaningless and redundant, a result foreclosed by generally accepted principles of statutory construction. *Shy v. State*, 459 A.2d at 125. The trial court did not err in its interpretation of 16 *Del.C.* § 4753A(a)(4) and, therefore, we affirm the ruling of the Superior Court.

### IV.

■ Appellants' fourth argument is that the trial court abused its discretion in denying the Lloyds' motion for a new trial. The trial court denied the motion on the basis that alleged newly available testimony did not constitute newly discovered evidence as that phrase is defined for purposes of seeking a new trial. *Richardson v. State*, Del. Supr., 436 A.2d 1127 (1981); *Sexton v. State*, Del.Supr., 397 A.2d 540 (1979).

The Lloyds state in their motion for a new trial that Paula Simmons informed her presentence officer, and the presentence report reflects, that the Lloyds were not present at the scene of the crime. They also contend that Simmons' testimony was not available to them at their trial because Simmons invoked her fifth amendment privilege and refused to testify. The Lloyds maintain in their motion that Simmons is now available to testify because having been convicted and sentenced, she no longer possesses her Fifth Amendment privilege against self-incrimination.

The motion for a new trial was filed without any supporting affidavits. Therefore, the trial court made its decision as to whether Simmons' alleged newly available testimony constituted newly discovered evidence, based only on the allegations presented in the motion.

---

**3.** Section 4716(d)(3) of Title 16 lists substances, including methamphetamine, having a potential for abuse associated with a stimulant effect on the central nervous system.

The trial court had to be satisfied that Simmons' testimony was actually available and that it would meet the following three criteria before it was free to grant a new trial based on newly discovered evidence:

(1) The new evidence must be of such a nature that it would have probably changed the result if presented to the jury;

(2) The evidence must have been newly discovered; *i.e.*, it must have been discovered since trial, and the circumstances must be such as to indicate that it could not have been discovered before trial with due diligence; and

(3) The evidence must not be merely cumulative or impeaching.

*State v. Lynch*, Del. Oyer & Term., 128 A. 565, 568, 32 Del. 600 (Del.1925).

We recognize that in many respects newly available evidence may properly be viewed as if it were newly discovered evidence, and it may entitle a defendant to a new trial. *Compare Whitmore v. State*, Tex.Crim.App., 570 S.W.2d 889, 896 (1978) *with Jones v. Scurr*, Iowa Supr., 316 N.W. 2d 905 (1982). However, in jurisdictions where newly available evidence may form a basis for a new trial, a defendant is not entitled to a new trial merely because a codefendant's testimony is "newly available." *See Van Byrd v. State*, Tex.Crim. App., 605 S.W.2d 265, 267 (1980). A defendant is not entitled to a new trial unless he can satisfy *all* of the requirements for a new trial based on newly discovered or available evidence. *Wilson v. State*, Tex. App., 633 S.W.2d 351 (1982). In this case, the Lloyds presented no evidence to the court which would establish that Simmons' testimony: (1) is actually available; (2) would be of such a nature that it would have probably changed the result of the trial if presented to the jury; and (3) would not be merely cumulative or impeaching.

The trial court has twice denied the Lloyds' motion for a new trial. The Superior Court had before it only the unsupported allegations contained in the motion for a new trial. The court did not abuse its discretion in denying the motion. We, therefore, affirm the decision of the Superior Court on that issue.

\* \* \* \* \* \*

Thus, we affirm the decisions of the Superior Court.