# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 80001076DI |
| | ) | |
| | ) | |
| JAPHIS LAMPKINS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 12, 2023
Decided: September 28, 2023

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED

Carolyn Hake, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Japhis Lampkins, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se*.

**O'Connor, Commissioner.**

1

This 28th day of September, 2023, upon consideration of Defendant's Motion for Postconviction Relief, the State's Response to Defendant's Motion for Postconviction Relief, Defendant's *Pro Se* Amended Reply to State's Response to Defendant's *Pro Se* Motion for Postconviction Relief, and the record in this matter, the following is my Report and Recommendation.

**FACTUAL BACKGROUND**

On August 2, 1983, the Delaware Supreme Court set forth the following facts in its Opinion affirming Japhis Lampkins' ("Defendant" or "Lampkins") convictions on direct appeal:[1]

At trial before a jury, the State presented evidence as follows:

Fifty-nine year old Mary Dugan (hereinafter "victim") lived with her son in an apartment at 1409 Delaware Avenue in Wilmington. On April 2, 1980, about noon, the victim telephoned her son at work, as was her custom. During the conversation, the son asked his mother to shop for groceries at a local supermarket. At approximately 3:00 p.m., a police officer responded to a "woman screaming" complaint at the victim's apartment house. The officer entered the victim's apartment through an open door after his call went unanswered. Upon entering the living room, the officer saw the victim on the floor, blood flowing from the left side of her face, her mouth opening and closing, her eyes fluttering. Standing nearby was her

---

[1] *Lampkins v. State*, 465 A.2d 785, 786-88 (Del. Aug. 2, 1983).

shopping cart with two bags of groceries. Alongside her body were several of her kitchen knives, including one from which the blade had been broken off. Another knife was lodged, up to its handle, in the victim's left buttock. Her panties lay beside her. The officer called immediately for an ambulance. The victim was pronounced dead at the hospital.

The Medical Examiner who performed the autopsy testified that the condition of the victim's head and face was "awful." His examination revealed that she was repeatedly stabbed in the face, struck on the head with a blunt instrument, and strangled to the extent that blood vessels in her eyes burst. In addition to her head wounds, she had stab wounds in her chest, abdomen, back, and crotch. She was stabbed 23 times. The Medical Examiner testified that any one of several of the wounds would have been fatal, including the blow to the head, the stab wound in the heart, and asphyxiation from strangulation. The Examiner concluded that, based on the number, nature and location of her wounds, the victim had been attacked by more than one person. The Medical Examiner also testified that a wound, as depicted in a photograph of Brookins' right hand taken on April 11, 1980, was consistent with having been caused by a knife with handle breaking off while being used in stabbing a person; that the wound had occurred within 2 weeks prior to the photograph.

Thomas M. Butler ("Butler") was indicted with the defendants for Conspiracy in the Second Degree (11 *Del.C.* § 512). Prior to trial, Butler plead guilty to

Manslaughter (11 *Del.C.* § 632) and the Conspiracy charge. In return, he testified for the State against both defendants.

Butler testified as follows: On the morning of April 2nd, he and Japhis Lampkins committed an armed robbery in Newark and separated upon their return to Wilmington. In the afternoon, he again met Lampkins, this time with Tyrone Brookins ("Brookins"). Brookins was a drug addict. The three men smoked marijuana and Brookins and Lampkins injected themselves with cocaine and "crank" (methamphetamine). Butler was "high" while Lampkins and Brookins were "messed up." Knowing that Lampkins and Butler had committed a successful robbery earlier in the day, Brookins was anxious to "make a sting." The three decided to go to the nearby supermarket. There they saw the victim pulling her cart and followed her home. Butler waited outside while first Brookins, and then Lampkins, went into the victim's apartment. When Butler heard Lampkins' voice, scuffling, and a woman moaning, he fled.

Butler's testimony was corroborated in several ways:

An F.B.I. expert in hair comparisons testified that a hair found on the back door of the victim's apartment and a hair on a tissue found beside the victim were microscopically similar to Brookins' head hair and pubic hair, respectively. The expert testified that such dual hair similarities were rare for one individual.

A shoe print lifted from the bloody floor beside the victim was also examined by an F.B.I. expert. He testified that, although the print lacked clarity and sufficient detail to support a positive opinion, similarities existed both in the design and size of the footprint and the "sneaker" Brookins was wearing when he was arrested.

A blood-stained vase found on a chair near the victim was also introduced. A blood expert testified that the blood on the vase did not match the victim's blood; that it matched Brookins' blood type in all but one of the blood components. The examiner testified that although the variant component could indicate that the blood on the vase was not Brookins', he had never seen known and unknown samples match in all but one component. He testified that the sample manifesting the variant component could have been contaminated by the victim's blood; that such a mix or contamination would have "masked" the Brookins' component.

A police detective testified that, on April 10, 1980, he spoke with Lampkins' brother, Acey Lampkins, at the latter's request, and that Acey told him the following: that Acey had spoken with Butler shortly after the murder; that Butler told Acey that Butler and two others had followed a woman from a supermarket to her home along Delaware Avenue; that Butler said they knocked on the door and, when the woman opened it, stabbed her in the face; that his brother, Japhis, related substantially the same story to him.

5

Acey later recanted his statement, both to police and at trial. He conceded at trial, however, that his initial statement was wholly voluntary. He further testified that, prior to his recantation, he thought about the possibility of his brother receiving the death penalty if convicted.

Timothy Wright ("Wright"), Japhis Lampkins' nephew, testified that he had given statements to police on April 11, and April 14, 1980, regarding his knowledge of Lampkins' involvement in the murder. Wright testified that in the first statement he denied any knowledge of Lampkins' involvement but that he had not told police all he knew. In the second statement, Wright admitted to police that Lampkins told him he had followed an old lady from a supermarket to her house and robbed her. At trial, however, Wright recanted the statement, testifying that he never had such a conversation with Lampkins, that he made the statement only because of threats by the police "to lock [him] up," and that the statement was based not on his personal knowledge but on what the police told him regarding Lampkins' involvement.

A neighbor living above the victim's apartment testified that, just before the police arrived, she heard the apartment building's front door slam and saw a man running from the building dressed in white hat, blue denim pants, and blue denim jacket. A witness who had seen Lampkins and Brookins at the scene of the morning Newark robbery testified that one of the robbers, who matched Lampkins'

description, was dressed almost entirely in dark blue and, at one point, put on a white hat.

So went the State's case.

At trial, both defendants testified in their own defense, each presenting a separate alibi.

Lampkins admitted committing the morning Newark robbery with Butler, but said that at the time of the killing he was across town cleaning his car. When the prosecutor pointed out to him that the car he claimed to have been cleaning was a rental car he had rented only a day or two earlier, Lampkins testified that sticky "cherry things" had dropped on the car the night before and he was concerned with liability for damage to the finish. When the prosecutor asked Lampkins what type of tree would be dropping anything at the beginning of April, he responded that it was "an evergreen." An expert called by the State testified that there were no trees or plants growing in New Castle County in general, or on the defendant's street in particular, which would have been producing a sticky substance in early April, 1980.

Brookins claimed that, at the time of the murder, he was shopping in downtown Wilmington with Debbie Benson ("Benson"), the mother of his children. At trial, Benson supported Brookins' alibi. In an earlier written statement, however, she had indicated that Brookins was with her until only 1:00 p.m. on the day of the

murder; that he then told her he was going to a poolroom and she did not see him again until the evening.

Brookins explained that the cut on his hand was caused by falling on a piece of glass during a handball game with Eric Jones ("Jones"). Jones testified that although he told defense counsel he could substantiate Brookins' story, he did so because he had received a threatening phone call.

**PROCEDURAL BACKGROUND**

On May 29, 1981, Lampkins was convicted of Murder First Degree, Conspiracy First Degree, Burglary Second Degree and Possession of a Deadly Weapon During the Commission of a Felony. On June 12, 1981, this Court sentenced Defendant to life imprisonment without the possibility of probation or parole, plus fifteen years.[2]

On July 1, 1981, Defendant appealed his convictions to the Delaware Supreme Court.[3] On August 2, 1983, the Delaware Supreme Court affirmed Defendant's convictions, and on August 22, 1983, the Delaware Supreme Court issued its mandate.[4]

Thereafter, Defendant filed a Petition for a Writ of Habeas Corpus ("Petition") in the United States District Court for the District of Delaware. In the Petition,

---

[2] Docket Item ("D.I.") 96. Sentence Order.
[3] D.I. 100. Notice of Appeal.
[4] D.I. 115. Mandate of the Delaware Supreme Court.

Defendant claimed his statement to the police was obtained in violation of his rights pursuant to *Miranda v. Arizona*;[5] this Court erred in denying a motion to sever the trial from his co-defendant; and this Court should have suppressed physical evidence which the police recovered from Brookins. The District Court denied Defendant's Petition.[6]

On March 31, 1988, Defendant filed his first Motion for Postconviction Relief. Defendant argued the State's use of his custodial interview at trial was improper because he did not have the benefit of counsel.[7] This Court summarily dismissed Defendant's Motion.[8] On November 14, 1988, the Delaware Supreme Court affirmed the dismissal of Defendant's first postconviction motion.[9]

On October 5, 2010, Defendant filed a second Motion for Postconviction Relief.[10] Defendant argued he should have been afforded a jury instruction regarding the applicability of 11 *Del. C.* §§ 271 and 274; he claimed he could not be convicted based upon inconsistent witness testimony; and he asserted his Due Process rights were violated by the State's expert testimony regarding hair and shoeprint analysis.[11]

---

[5] 384 U.S. 436 (1985).
[6] *See Lampkins v. State*, 1988 WL 137209 (Del. 1988), *citing Lampkins v. Redman*, Civ.A.No. 85-625-JJF (D.Del. June 30, 1986), *vacated*, No. 86-5469 (3d Cir. Dec. 31, 1986), *on remand* No. 85-625-JJF (D.Del. Apr. 10, 1987), *certif. Prob. Cause denied after remand,* No. 87-3289 (3d. Cir. Aug. 13, 1987).
[7] D.I. 118, March 31, 1988 Motion for Postconviction Relief ¶ 2.
[8] *State v. Lampkins*, 1988 WL 97879 (Del. Super. Aug. 31, 1988).
[9] *Lampkins v. State*, 1988 WL 137209 (Del. Nov. 14, 1988).
[10] D.I. 144, October 5, 2010 Motion for Postconviction Relief.
[11] *Id.* at 3.

Importantly, as it relates to his present postconviction claim, Defendant attached, as Exhibit A to his Motion, a February 28, 1983 affidavit from Thomas Butler in which Butler claimed:

> Lampkins had no knowledge of the two murders. I lied when I say that he did. The Wilmington Police Department told me what to say and how to say it. Without fear I can say that [Lampkins] had no involvement in the crimes. At this time also I'm willing to testify on behalf of Japhis Lampkins. And Tyrone Brookins is the guilty party in the crimes I will testif[y] to that. I just want to do the right thing.[12]

On December 22, 2010, this Court summarily dismissed the Motion as procedurally barred,[13] and on February 22, 2012, the Delaware Supreme Court affirmed the dismissal of Defendant's second postconviction motion.[14]

On December 2, 2013, Defendant filed a third Motion for Postconviction Relief,[15] which was amended on December 11, 2015.[16] Therein, Defendant presented several ineffective assistance of counsel claims.[17] On August 11, 2016,

---

[12] D.I. 145, October 5, 2010 Memorandum of Law in Support of Movant's Postconviction Relief Motion Rule 61, Exhibit A, February 28, 1983 Affidavit of Thomas Butler.

[13] *State v. Lampkins*, 2010 WL 8250847, at *3 (Del. Super. Dec. 22, 2010).

[14] *Lampkins v. State*, 2012 WL 581703, at *1 (Del. Feb. 22, 2012).

[15] D.I. 168. Motion for Postconviction Relief.

[16] D.I. 181. Amended Motion for Postconviction Relief.

[17] Defendant claimed trial counsel "merely went through the motions;" failed to exclude the trial testimony of Thomas Butler; failed to file a motion for severance from his co-defendant; failed to "develop a trial defense;" failing to adequately challenge the testimony of the medical examiner to establish a "clear cause of death" from a multitude of stab wounds; failed to conduct a "meaningful investigation;" failed to enlist a expert witness on hair and fiber and footprint impression testimony; failed to insure "accurate briefs were presented;" failed to interview and procure "essential witnesses" that could have "boasted Defendant's innocence;" and failed to "make a motion for judgment of acquittal." *Id.* at 5-12.

this Court summarily dismissed Defendant's claims as procedurally barred,[18] and on February 27, 2017, the Delaware Supreme Court affirmed the dismissal of Defendant's third postconviction motion.[19]

**THE PARTIES' CONTENTIONS**

On September 23, 2022, Defendant filed a fourth Motion for Postconviction Relief.[20] Defendant acknowledges that this Motion is otherwise procedurally barred as untimely and repetitive,[21] but asserts he possesses new evidence that creates a strong inference that he is innocent in fact of the acts underlying the charges.[22] Specifically, Defendant claims, without providing an affidavit or other evidence, that Debbie Benson ("Benson") would testify that before Brookins' death more than nine years ago, Brookins told Benson that Butler testified falsely during the trial, and Brookins exonerated Defendant from culpability for the Dugan homicide.[23] According to Defendant, Benson would testify that Brookins felt guilty about not correcting Butler's "false testimony," and "Brookins confided to her that he

---

[18] *State v. Lampkins*, 2016 WL 4251155, at *3 (Del. Super. Aug. 11, 2016).
[19] *Lampkins v. State*, 2017 WL 772499, at *1 (Del. Feb. 27, 2017).
[20] D.I. 204.
[21] *Id.* at 15 ("Petitioner is concededly time barred and procedurally barred under normal circumstances due to this motion being untimely and successive.").
[22] *Id.*
[23] D.I. 204, Motion for Postconviction Relief at 1. Despite Defendant's claim as to what Benson would testify to regarding Brookins' almost decade-old statements to her, this Court has not received any evidence from Benson.

acknowledged his guilt in the crimes charged and no longer wished to pursue claims in court to the contrary, thereby consigning himself to a life in prison."[24]

Defendant also claims, without providing an affidavit or other evidence, that, at the time of the Dugan homicide, he was married but also had a girlfriend – Alfreida Campbell ("Campbell"). He now claims, for the first time, more than forty years after his conviction, that he was with Campbell at the time Dugan was murdered. He explains that he disclosed this potential alibi to trial counsel, but he elected not to raise this alibi because it would have "effectively ended his marriage," and he claims Campbell is now willing to testify in support of this alibi.[25]

The State asserts Defendant's fourth Motion for Postconviction Relief is procedurally barred pursuant to Rule 61(i)(1), (2) and (4).[26] The State also contends that Defendant has failed to plead with particularity the existence of newly discovered evidence which creates a strong inference he is innocent in fact of the acts underlying the charges for which he was convicted.[27]

---

[24] *Id.* On November 21, 2013, Brookins was reported deceased. D.I. 198, *State v. Brookins*, Case ID. No. 80001074DI.
[25] D.I. 204, September 23, 2022 Motion for Postconviction Relief at 28.
[26] D.I. 210, March 3, 2023, State's Response to Defendant's *Pro Se* Fourth Motion for Postconviction Relief at 22-24.
[27] *Id.* at 25.

**DISCUSSION**

Superior Court Criminal Rule 61 provides an individual with a limited opportunity to seek postconviction relief.[28] The purpose of postconviction relief is "to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[29] Before considering the merits of any postconviction relief motion, this Court must first apply Rule 61's procedural bars. A motion for postconviction relief can be procedurally barred as untimely, repetitive, formerly adjudicated, or procedurally defaulted.[30] The bars to relief do not apply to claims that this Court lacked jurisdiction, or a claim that is pled with particularity that new evidence exists that creates a strong inference of actual innocence.[31]

**A. Procedural Bars**

Defendant concedes that his Motion is both untimely and repetitive,[32] but he claims to overcome the procedural bars by identifying "with particularity new evidence that creates a strong inference that he is actually innocent in fact of the acts underlying the charges."[33] Despite Defendant's concession regarding the

---

[28] *State v. Washington*, 2021 WL 5232259, at *4 (Del. Super. Nov. 9, 2021), *aff'd, Washington v. State,* 275 A.3d 1258 (Del. 2022).

[29] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[30] *Washington*, 2021 WL 5232259, at *4.

[31] *See* Super. Ct. Crim. R. 61(d)(2).

[32] D.I. 204, Motion for Postconviction Relief at 15 ("Petitioner is concededly time-barred and procedurally barred under normal circumstances due to his motion being untimely and successive.")

[33] *Id.* (quoting *Purnell v. State*, 254 A.3d 1053, 1095 (Del. 2021) (citing Super. Ct. Crim. R. 61(d)(2)(i)).

procedural bars, this Court will review whether Defendant satisfied the procedural requirements of Superior Court Criminal Rule 61 before considering the merit of his underlying claim.[34]

Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief filed more than one year after the judgment of conviction is final.[35] Here, Defendant's Motion was filed more than thirty-nine years after the judgment of conviction became final. Moreover, Defendant has failed to allege any facts implicating the exception to the Rule 61(i)(1) procedural bar.[36] Defendant's claim is procedurally barred as untimely filed.

Rule 61(i)(2) prohibits the filing of repetitive motions for postconviction relief, unless: under Rule 61(d)(2)(i) and (ii), Defendant pleads with particularity that new evidence exists that creates a strong inference of actual innocence, or that a new rule of constitutional law, made retroactive to cases on collateral review,

---

[34] *Taylor v. State*, 32 A.3d 374, 388 (Del. 2011) (quoting *Shelton v. State,* 744 A.2d 465, 474 (Del. 1999)). This Court will apply the post-June 4, 2014 version of Superior Court Criminal Rule 61 to Defendant's claims. *See State v. Taylor*, 2018 WL 3199537, at *6 (Del. Super. June 28, 2018) ("In sum, the Delaware Supreme Court has held amended Rule 61 applies to all motions filed after June 4, 2014.").

[35] Super. Ct. Crim. R. 61(i)(1). A judgment of conviction is final "when the Supreme Court issues a mandate or order finally determining the case on direct review." *State v. Drake*, 2008 WL 5264880, at *1 (Del. Super. Dec. 15, 2008).

[36] Super. Ct. Crim. R. 61(i)(1). To avoid the procedural bar, Defendant can also "allege facts supporting a claim that there exists a retroactively applicable right that is newly recognized after the judgment of conviction was final, more than one year after the right was first recognized by the Delaware Supreme Court or the U.S. Supreme Court." *Id.*

applies to the movant's case.[37]  As this is Defendant's fourth postconviction Motion, it is procedurally barred as repetitive.  And, as is discussed *supra*, Defendant has failed to satisfy Rule 61(d)(2).

Rule 61(i)(4) considers formerly adjudicated postconviction claims.  It provides that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[38]

The State argues Defendant's claim was previously adjudicated.  Specifically, on October 10, 2010, Defendant filed a second Motion for Postconviction Relief, wherein he claimed he could not be convicted based upon the inconsistent testimony of two state's witnesses.  Defendant argued, in reliance on co-defendant Butler's February 28, 1983 affidavit, which he again relies upon here, that "no rational juror could conclude beyond a reasonable doubt that Mr. Lampkins was involved [in the murder of the victim] or what, if any, role he played."[39]

In 2010, this Court rejected Lampkins' inconsistent testimony argument, specifically noting that co-defendant Butler's 1983 affidavit recanted his trial

---

[37] Super. Ct. Crim. R. 61(i)(2).  Defendant has not availed himself of the exception noted in Rule 61(d)(2)(ii).

[38] Super. Ct. Crim. R. 61(i)(4).

[39] *Lampkins*, 2010 WL 8250847, at *5 (Del. Super. Dec. 22, 2010).   On April 6, 2011, Upon completing a *de novo* review of the record, a Superior Court judge adopted the Superior Court Commissioner's Report and Recommendation.  *State v. Lampkins*, ID No. 80001076DI, Order (Del. Super. April 6, 2011), *aff'd Lampkins v. State*, 2012 WL 581703 (Del. Feb. 22, 2012).

testimony, exculpated the Defendant, and claimed Brookins committed the Dugan homicide.[40] This Court opined:

> The totality of the State's case did not rest on the "inconsistent testimony of two state's witnesses" but encompassed much more, as discussed above and set forth more fully in the Delaware Supreme Court's opinion on Lampkins' direct appeal. There was substantial and competent evidence against Lampkins to support his convictions.[41]

Defendant's claim – that Butler's incriminating trial testimony was false as to Defendant's involvement in the Dugan homicide, was previously adjudicated in 2010 when this Court considered Defendant's second postconviction relief motion. It makes little difference if the source of the information was Butler's 1983 affidavit, or Benson, who claims Brookins told her almost a decade ago that Butler's trial testimony was false.[42] At best, Benson's statement from Brookins is cumulative evidence of Butler's 1983 affidavit. Benson's belated claim that Brookins told her Butler's trial testimony was false is just as suspect as Butler's 1983 affidavit was in Defendant's 2010 postconviction motion. Defendant is not entitled to have his claim that Butler testified falsely re-examined in a subsequent postconviction motion because it has been "refined or restated."[43] As this Court held in *State v. Clay*, when

---

[40] Contrary to Butler's incriminating testimony as a State's witness as to Defendant, Butler later claimed Lampkins was not involved in the murder of Mary Dugan. Butler's affidavit provided:

[41] *Lampkins*, 2010 WL 8250847, at *5 (citing *Lampkins*, 465 A.2d at 789-95).

[42] Brookins would have made this statement to Benson more than thirty years after his conviction.

[43] *State v. Clay*, 2022 WL 893744, at *2 (Del. Super. Mar. 25, 2022), *aff'd Clay v. State*, 2022 WL 4295417 (Del. Sept. 16, 2022).

a postconviction claim has been previously adjudicated "in a postconviction proceeding, it cannot constitute newly discovered evidence."[44] As a result, pursuant to Rule 61(i)(4), Defendant's Motion is procedurally barred and subject to summary dismissal.

Assuming for argument's sake that Defendant's claim was not subject the procedural bars pursuant to Rule 61(i)(1), (2) and (4), it nonetheless fails. Under Rule 61(i)(2) and Rule 61(i)(5), a defendant may overcome applicability of the procedural bars if he satisfies Rule 61(d)(2)(i): a defendant must "plead with particularity that new evidence exists that creates a strong inference that movant is actually innocent in fact of the acts underlying the charges of which he was convicted."[45]

### B. **New Evidence**[46]

In the context of a motion for postconviction relief, "new" evidence is evidence discovered after trial which could not have been discovered before trial with due diligence.[47] To establish a valid claim of newly discovered evidence, "the new evidence must show that it is 'more likely than not that no reasonable juror

---

[44] *Clay*, 2022 WL 893744, at *3.
[45] Super. Ct. Crim. R. 61(d)(2)(i).
[46] Defendant has not provided the Court any evidence directly from Benson, the declarant upon which his postconviction claim is premised.
[47] *Lloyd v. State*, 534 A.2d 1262, 1267 (Del. 1987).

would have convicted' the defendant."[48]  A defendant "shoulders a heavy burden in establishing that the existence of 'new evidence' creates a strong inference of his actual innocence,"[49] and a defendant "cannot successfully navigate the 'actual innocence' standard with evidence that is 'merely cumulative or impeaching.' Thus, any new evidence 'that goes only to the weight or credibility of that which was presented to the [factfinder] is almost never adequate to meet the demanding bar for being granted a new trial.'"[50]

Moreover, evidence provided by declarants or witnesses who testified at trial or were known to the parties before trial does not constitute newly discovered evidence.[51]  And, this Court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant [] bear on the probable reliability of that evidence."[52]

Recantation evidence, upon which Defendant relies, is "properly viewed with great suspicion.  It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves to only impeach cumulative evidence rather than to undermine confidence in the accuracy of the

---

[48] *State v. White*, 2018 WL 6131897, at *4 (Del. Super. Nov. 21, 2018), *aff'd White v. State*, 2019 WL 1529654 (Del. Apr. 8, 2019).
[49] *State v. Madison*, 2022 WL 3011377 (Del. Super. July 29, 2022), *aff'd, Madison v. State*, 2022 WL 17982946 (Del. Dec. 29, 2022).
[50] *Id.* (citing *Purnell v. State*, 254 A.3d 1053, 1100 (Del. 2021)).
[51] *State v. Riddock*, 2022 WL 17820366, at *5 (Del. Super. Dec. 19, 2022).
[52] *State v. Sykes*, 2017 WL 6205776, at *5 (Del. Super. Dec. 7, 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)), *aff'd Sykes v. State*, 2018 WL 4932731 (Del. Oct. 10, 2018).

conviction."[53]   When recantation evidence "merely impeaches [a witness'] trial testimony, - [it] does not constitute new evidence that proves actual innocence."[54]

### 1. Brookins' Statement to Benson

The Defendant now resubmits Butler's 1983 affidavit, which he has possessed for at least twelve years, as "new" evidence.  Coupled with the 1983 Butler affidavit, the Defendant offers as additional/supporting evidence a statement allegedly made by Brookins to Brookins' paramour, Benson, almost a decade ago, in which Brookins allegedly told Benson that Butler lied when Butler testified at trial.   It is these two items taken together, the 1983 Butler affidavit, and the Brookins statement as relayed by Benson, which together constitute Defendant's newly discovered evidence.

The 1983 Butler affidavit is not new evidence, as the Defendant has possessed it since at least 2010, and presented it to this Court to support a postconviction claim in his second postconviction motion.  As to Brookins' alleged statement to Benson, it is not new evidence, for several reasons.   First, both Brookins and Benson were witnesses in the 1981 trial, and they both presented an alibi that the jury rejected – that Brookins was with Benson shopping in Wilmington at the time of the Dugan

---

[53] *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984).  Delaware Courts also view recantation evidence with suspicion.  *State v. Washington*, 2021 WL 5232259, at *6 (Del. Super. Nov. 9, 2021), *aff'd Washington v. State*, 2022 WL 1041267 (Del. Apr. 7, 2022).
[54] *Washington*, 2021 WL 5232259, at *6 (citing *Taylor v. State*, 180 A.3d 41 (Del. 2018)), *Downes v. State*, 771 A.2d 289, 291 (Del. 2001).

homicide. Any post-trial statement by Brookins which is contrary to or inconsistent with his original trial testimony constitutes a revised version of Brookins' prior trial testimony. And, as the State points out, until his death in 2013, Brookins actively appealed his conviction, filing numerous postconviction motions in both State and Federal Court.[55] In all of Brookins' postconviction filings, Brookins never expressed culpability for the Dugan homicide, and he did not exculpate the Defendant, making his alleged statement to Benson even more suspect and incredible. Brookins' statement to Benson is cumulative evidence of Butler's 1983 affidavit, impeaches Brookins' trial testimony, and is not new evidence.[56]

Additionally, Benson, as the source of the Brookins's revised statement, would be impeaching her own 1981 alibi testimony. At trial, Benson supported Brookins' alibi by testifying she and Brookins were shopping in Wilmington at the time Dugan was murdered.[57] Assuming Brookins' statement incriminating himself and exculpating the Defendant is true, Benson's 1981 alibi testimony was false.[58] Benson's expected testimony is neither new nor credible.

---

[55] *See Brookins v. State*, 1986 WL 16796 (Del. May 1, 1986) (affirming denial of Motion for Postconviction Relief); *Brookins v. State*, 1999 WL 1090567 (Del. Oct. 14, 1999) (affirming denial of Motion for Postconviction Relief); *Brookins v. Redman,* Civ. Act. No. 84-318-WKS (D.Del. Nov. 26, 1984) (denial of federal habeas relief); *Brookins v. Redman*, Civ. Act. No. 86-226-JRR (D.Del. Sept. 10, 1986) (denial of federal habeas relief); *Brookins v. Redman*, Civ. Act. No. 87-434-JLL (D.Del. Oct. 5, 1987) (denial of federal habeas relief), *Brookins v. Phelps*, 2010 WL 3909326 (D.Del. Sept. 30, 2010) (denial of federal habeas relief).

[56] *Riddick*, 2022 WL 17820366, at *5.

[57] *Id.* at 70:16 – 72:22.

[58] *Id.* at 66:18 – 67:1.

The record before this Court does not support Defendant's postconviction claim of newly discovered evidence which creates a strong inference that he is actually innocent in fact of the acts underlying the charged offenses. As none of the evidence upon which Defendant relies constitutes "new" evidence which should have been discovered before trial with due diligence, Defendant cannot meet the strict pleading requirements of Rule 61(i)(2)(i) or Rule 61(d)(2)(i)-(ii), and his Motion is procedurally barred.

### 2. Alfreida Campbell Alibi

Finally, Defendant claims that Alfreida Campbell ("Campbell") was his girlfriend at the time of the Dugan homicide. He claims he informed trial counsel he was "hesitant at the time to publicize the fact that he had a girlfriend and was with her at the time of Dugan's death because [Defendant] was married. Using Campbell as an alibi would have effectively ended his marriage. At any rate, Campbell is willing to come forward and act as an alibi witness for Petitioner if given an opportunity to do so."[59] This purported alibi, which is wholly different than the alibi Defendant presented at trial in 1981, was known to Defendant and his counsel at trial, but Lampkins chose not to present it. This claim of a second, independent alibi is procedurally barred, and it is not "evidence discovered since the trial [which]

---

[59] D.I. 204, Motion for Postconviction Relief at 28. Defendant has again failed to provide the Court any evidence from Campbell which supports Defendant's alibi claim.

could not have been discovered by the exercise of due diligence," nor is it newly discovered evidence that creates a strong inference of Defendant's actual innocence.[60]  In fact, it is an alibi that impeaches Defendant's trial testimony (which was an entirely different alibi).

## CONCLUSION

Defendant's postconviction claim is procedurally barred pursuant to Rules 61(i)(1), (2), and (4), and Defendant's claim of "newly" discovered evidence pursuant to Rule 61(d)(2)(i) is not supported by the record.  Defendant has failed to establish that no reasonable jury would have found him guilty beyond a reasonable doubt.  Moreover, Defendant's alibi claim that he was with Alfreida Campbell at the time of the homicide is neither new nor newly discovered evidence, and is procedurally barred.

---

[60] *Washington*, 2021 WL 5232259, at \*6 (citing *Taylor v. State*, 180 A.3d 41 (Del. 2018)).

For all of the aforestated reasons, Defendant's Motion for Postconviction Relief should be **SUMMARILY DISMISSED** as procedurally barred. Defendant's Motion for an Evidentiary Hearing is **MOOT**.

**IT IS SO RECOMMENDED.**

/S/*Martin B. O'Connor*
Commissioner Martin B. O'Connor

oc:     Prothonotary